**Awni Ali MASSOUD, Plaintiff,**

v.

**ATTORNEY GENERAL OF the UNITED STATES et al., Defendants.**

**No. 78–CV–0630–W–3.**

United States District Court,
W. D. Missouri,
Western Division.

Oct. 10, 1978.

---

**13.** *EEOC v. Datapoint Corporation,* 412 F.Supp. 406, 408–410, Finding of Fact 15, Conclusion of Law 14 (W.D.Tex., 1976).

Robert Frager, Kansas City, Mo., for plaintiff.

Robert E. Larsen, Asst. U. S. Atty., Kansas City, Mo., for defendants.

## ORDER

RUSSELL G. CLARK, District Judge.

Plaintiff, a twenty-four year old resident of Nasserat, Gaza Strip in Israeli held territory who presently resides in Emporia, Kansas filed an action for a declaratory judgment under the Declaratory Judgment Act (28 U.S.C. § 2201) and for review under the Administrative Procedure Act (5 U.S.C. § 706).

At a conference before the Court on Friday, September 1, 1978, both parties agreed

that since the material facts were not in dispute, the case would be submitted to the Court on a motion for summary judgment for the earliest possible decision. The defendants filed a motion for summary judgment on Friday, September 6, 1978. On September 14, 1978 plaintiff filed a motion for summary judgment and suggestions in opposition to defendant's motion for summary judgment. The pleadings and documents filed by the parties indicated the following facts:

(1) Plaintiff entered this country as a non-immigrant student in November of 1975.

(2) Plaintiff withdrew from all classes at Emporia State University prior to April of 1977.

(3) On September 26, 1977 the District Director of the Immigration and Naturalization Service notified plaintiff that he had violated the terms of his admission as a non-immigrant and therefore he was required to depart from the United States at his own expense on or before October 26, 1977.

(4) On October 12, 1977 plaintiff married Della Beth Watts, a United States citizen.

(5) Thereafter on October 31, 1977 plaintiff's wife petitioned the Immigration and Naturalization Service to obtain an immigrant visa allowing plaintiff to remain in the United States as an alien relative. This application was granted on November 13, 1977.

(6) Thereafter plaintiff filed an application for status as a permanent resident.

(7) On August 8, 1978 Mrs. Massoud requested that her October 31, 1977 petition to allow her husband to remain in the United States as an alien relative be withdrawn.

(8) On August 11, 1978 plaintiff's application for status as a permanent resident was denied. Plaintiff was granted until August 28, 1978 to depart from the United States.

On August 1, 1978 prior to a notification of the denial of plaintiff's application for permanent resident status and prior to the time Mrs. Massoud withdrew her October 31, 1977 petition, plaintiff requested that he be granted advance parole—that is permission to leave the country temporarily and re-enter upon the same alien status he possessed at that time. On August 1, 1978 plaintiff's application was denied by Ronald Brooks, Acting District Director for the Immigration and Naturalization Service. On August 2, 1978 plaintiff appealed to the Regional Counsel; thereafter, plaintiff was notified that denial of advance parole was not an appealable order. Subsequently, plaintiff filed this action for review of the District Director's decision. Plaintiff contends that authority exists for the Director to grant the advance parole he sought, that he is not disqualified for said relief, and that the defendants have abused their discretion and authority in denying him advance parole and that the denial was arbitrary, illegal and unlawful.

Judicial review of the administrative action challenged in this case is sought pursuant to 5 U.S.C. § 706. That section in part provides:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . .

The issue before this Court is whether the District Director's denial of plaintiff's request for advance parole was an abuse of discretion based on the information available to him on August 1, 1978. Since this inquiry focuses on the information before the Director at the time plaintiff's request was denied, subsequent developments concerning plaintiff's status in this country as described in findings of fact (7) and (8) above will not be considered by this Court.

The standard of review set forth in § 10(e)(2)(A) of the Administrative Procedures Act, 5 U.S.C. § 706(2)(A) is:

. . . a highly deferential one. It presumes agency action to be valid. Moreover, it forbids the court's substituting its judgment for that of the agency, and requires affirmance if a rational basis exists for the agency's decision. [citations omitted] *Ethyl Corporation v. Environmental Protection Agency*, 176 U.S. App.D.C. 373, 406, 541 F.2d 1, 34 (1976).

■ The basis of the agency's decision must be expressed by the agency and will not be supplied by the Court. As the Supreme Court recognized in *Bowman Trans. v. Arkansas-Best Freight*, 419 U.S. 281, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974):

While we may not supply a reasoned basis for the agency action that the agency itself has not given, we will uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned. Id. 419 U.S. at 285, 95 S.Ct. at 442, 42 L.Ed.2d at 456.

■ This standard of review is further complicated in this case because of the informal procedures utilized in the evaluation and determination of plaintiff's advance parole request. On August 1, 1978, Mr. Donald A. Brooks sent a brief letter to plaintiff's attorney notifying him, without explanation, that Awni Ali Massoud's request for advance parole had been denied. None of the statutes nor federal regulations relied on in this action required the District Director to make formal findings.

In connection with the defendant's motion for summary judgment, an affidavit from Mr. Ronald Brooks was submitted in which he set forth the factors he considered in denying Mr. Massoud's request.

■ While a distinction has been drawn between "supplementary articulations of the reasoning behind the original decision" and "post hoc rationalizations 'offered for the first time in litigation affidavits' in an effort to justify a decision already reached," *Rocky Ford Housing Authority v. U. S. Dept. of Agriculture*, 427 F.Supp. 118, 133 (D.C.1977), the Court concludes that the affidavits in this case fall in the former category. The Supreme Court determined that "post hoc rationalizations" are an inadequate basis for review because they:

clearly do not constitute the "whole record" compiled by the agency: the basis for review required by § 706 of the Administrative Procedure Act. *Citizens to Preserve Overton Park v. Volpe*, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

However, the Court in *Citizens to Preserve Overton Park*, supra, did recognize that since the record may not always reflect the factors considered by an administrative official in reaching a decision, the District Court may require the decision maker to provide a further explanation for his decision. As the United States Court of Appeals for the District of Columbia in *Local 814, Intl. Bro. of Teamsters v. N.L.R.B.*, 178 U.S.App.D.C. 223, 226, 546 F.2d 989, 992 (1976) explained, the rule prohibiting "post hoc rationalizations":

. . . is not a time barrier which freezes an agency's exercise of its judgment after an initial decision has been made and bars it from further articulation of its reasoning. It is a rule directed at reviewing courts which forbids judges to uphold agency action on the basis of rationales offered by anyone other than the proper decision-makers.

In *Citizens to Preserve Overton Park*, supra, the Court suggested that the District Court obtain further explanation by way of oral examination of the decision makers. In this case the Court feels that since only one individual was responsible for the challenged ruling, his affidavit may be considered without resorting to the necessity for oral testimony. Thus, the Court finds that Mr. Brooks' supplemental articulation of the reasons behind his original decision plus the documents on file with the Court, furnish a sufficient basis for review in this case.

8 U.S.C. § 1182(d)(5), 8 C.F.R. 245.2 as well as Service Operating Instructions of the Department of Immigration and Naturalization, allow an alien prior to the time an application for adjustment of status is reached, to apply to the District Director for advance parole to re-enter the country

following a brief absence abroad for various personal or bona fide business reasons in order to pursue the application for permanent residence. An applicant for advance parole may be issued a form I–512 advance parole authorization if he falls within one of five classes enumerated by the Immigration and Naturalization Operating Instruction 212.5(c). Class three includes:

> (3) An alien whose adjustment of status application is being held in abeyance within the purview of OI 245.4(a)(6) and who seeks to depart temporarily from the United States for any bona fide business or personal reason or any other alien whose adjustment of status application is pending and who, before a decision can be made thereon finds it necessary to depart temporarily for emergent personal or bona fide business reasons.

Class five includes:

> (5) An alien who is not an exchange alien subject to the foreign residence requirement, is not the beneficiary of a private bill and is not under deportation proceedings, in whose case parole has been authorized by the district director because of emergent or humanitarian considerations.

■ Plaintiff contends that the serious illness of his father justifies and constitutes a humanitarian and emergency consideration authorizing the granting of advance parole. While there may be some dispute as to whether plaintiff should seek advance parole as a class five applicant or a class three applicant, it is clear that authority exists for granting the relief that plaintiff has requested. The operating instructions indicate that form I–512 *may* be issued to individuals within one of the five enumerated classes unless reasons of national security or public order dictate otherwise. 8 U.S.C. § 1182 provides that the Attorney General may in his discretion parole in the United States temporarily under such conditions as he may prescribe for emergent reasons or reasons deemed strictly in the public interest of the United States. It seems clear that the parole authority granted to the Attorney General and delegated

to the District Director in this case is discretionary and not mandatory and is to be granted in accordance with the conditions and limitations established by the Attorney General or those authorized by him. 8 U.S.C. § 1182(d)(6).

■ Mr. Brooks' affidavit indicates that his refusal to grant plaintiff advance parole was based on a review of Mr. Massoud's record which revealed the following:

A petition to classify status of alien relative for issuance of immigrant visa was filed in his behalf by one Della Beth Massoud, a United States citizen, on October 31, 1977. The application was approved on November 13, 1977. A review of the supporting documents submitted with the petition, namely the marriage license issued October 10, 1977 in Kansas, revealed that the petitioner, Mrs. Massoud was only sixteen (16) years of age, and a parent or guardian had not signed the license as required granting consent for the marriage. This alone brought about some doubt as to the validity of the marriage.

On the basis of the approved petition Mr. Massoud filed on January 20, 1978 an application for status as permanent resident. On June 28, 1978 Mr. Massoud was interviewed under oath by an officer of this Service regarding that application at which time he stated he was not residing with the petitioner, Della Beth Watts, and that she was in the Girls Correction Home of Wichita Kansas. This added further doubt as to the validity of the marriage.

Further review of the record revealed a memorandum from an officer of this Service dated July 20, 1978 stating he had spoken with Mrs. Massoud on July 11, 1978 at the Girls Correction Home at which time she stated she had actually lived with Mr. Massoud less than one month. The memorandum also stated that on July 20, 1978, Terry Mundorf, attorney for Mrs. Massoud contacted this Service and stated that his client was forwarding a letter requesting withdrawal of the approved petition, and that she was filing for divorce.

One of the basic facts to be taken into consideration when granting an advance parole is that the applicant must be prima facie eligible for some benefit upon his return. Accordingly, since the record indicated that in all probability, Mr. Massoud's petition would no longer be valid upon his return and he intended to be outside of the United States for three months instead of the two months allowed by the operations instructions for a person in class (3), his request was denied. Had his request been granted knowing full well that his application for permanent resident status would, in all probability be denied, would have had to be considered entrapment, since he would then be in a parole status requiring expulsion and exclusion proceedings which would deny him the right to renew his application for permanent resident status before the Immigration Judge as he can in deportation proceedings. The request was, therefore, denied.

Additional affidavits submitted by the Government outline further the Immigration Service policy concerning advance parole:

> The Service policy is to grant advance parole to an adjustment applicant only in situations where he is prima facie eligible for adjustment and has equities in the United States which would probably lead to a favorable exercise of discretion. Advance parole normally is limited to situations where the alien would have a reasonable expectation of being allowed to remain in the United States upon his return. In the *Massoud* case, on the facts which you have related, the Service had information which led us to believe that the alien was not eligible for an immigrant visa. (Memo from Leonel J. Castillo, Commissioner Immigration and Naturalization Service, Sept. 11, 1978.)

Based on the factors outlined above, the Court concludes that a rational basis existed in this case for the denial of the advance parole sought by plaintiff. While the Court might not necessarily have reached the same conclusion on August 1, as the District Director did, the Court has no authority to set aside the agency action as being arbitrary merely because the Judge might have handled the matter differently had he been the agency official making the decision. Therefore, the District Director's decision to deny this plaintiff advance parole will be upheld. Therefore, it is hereby

ORDERED that the plaintiff's motion for summary judgment is denied; and it is further

ORDERED that the defendant's motion for summary judgment is hereby granted.