Golam **MUSTAFA**, Plaintiff,

v.

Doris **MEISSNER**, Commissioner of Immigration and Naturalization Service, Immigration and Naturalization Service, Defendants.

No. 94 Civ. 7856 (JGK).

United States District Court, S.D. New York.

Nov. 18, 1996.

Charles A. Grutman, New York City, for Golam Mustafa.

James F. Loprest, Jr., Asst. U.S. Attorney for SDNY, New York City, for Doris Meissner.

## MEMORANDUM OPINION AND ORDER

KOELTL, District Judge:

In this action, the plaintiff, Golam Mustafa, seeks a Writ of Mandamus or, in the alternative, a mandatory injunction compelling the defendants, Doris Meissner, Commissioner of Immigration and Naturalization Service, and the Immigration and Naturalization Service ("INS"), to grant him advance parole so that he can reenter the United States after travelling abroad. Advance parole is a procedure by which the INS permits certain aliens who are in the United States in a temporary status to obtain permission for a brief absence from the country. The plaintiff also seeks a declaratory judgment that the defendants have abused their discretion in denying him advance parole.

The plaintiff now moves for summary judgment. The defendants' cross-move to dismiss the complaint or, in the alternative, for summary judgment. For the reasons stated below, the plaintiff's motion is denied, and the defendants' motion is granted.

### I.

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Gallo v. Prudential Residential Servs. Ltd. Partnership*, 22 F.3d 1219, 1223 (2d Cir.1994). "The trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Id.*, 22 F.3d at 1224.

The moving party bears the initial burden of "informing the district court of the basis for its motion" and identifying the matter that "it believes demonstrates[s] the absence

of a genuine issue of material fact." *Celotex,* 477 U.S. at 323, 106 S.Ct. at 2553. The substantive law governing the case will identify those facts which are material and "only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citing *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)); *see also Gallo,* 22 F.3d at 1223.

If the moving party meets its burden, the burden shifts to the nonmoving party to come forward with "specific facts showing that there is a genuine issue for trial." Fed. R.Civ.P. 56(e). With respect to the issues on which summary judgment is sought, if there is any evidence in the record from any source from which a reasonable inference could be drawn in favor of the nonmoving party, summary judgment is improper. *See Chambers v. TRM Copy Ctrs. Corp.,* 43 F.3d 29, 37 (2d Cir.1994).

## II.

There is no genuine issue with respect to the following facts. The plaintiff is a citizen of Bangladesh residing in the United States. The plaintiff has applied for temporary resident status in the United States under § 245A of the Immigration Reform and Control Act of 1986 ("IRCA"), codified at 8 U.S.C. § 1255a. (Compl. ¶ 4). Section 1255a established a one time only legislative program that enabled aliens to apply for lawful temporary resident status and, after a one year waiting period, to apply for permanent residency.[1] In order to qualify for the program, the alien must have resided continuously in the United States in an un-

lawful status since January 1, 1982, *see* 8 U.S.C. § 1255a(a)(2)(A), and must have been continuously physically present in the United States since November 6, 1986, *see* 8 U.S.C. § 1255a(a)(3)(A). IRCA also provides that "[a]n alien shall not be considered to have failed to maintain continuous physical presence in the United States for purposes of subparagraph (A) by virtue of brief, casual, and innocent absences from the United States." 8 U.S.C. § 1255a(a)(3)(B). The INS has issued regulations concerning the implementation of § 245A of the IRCA that provide that the "term continuous physical presence ... means actual continuous presence in the United States since November 6, 1986 until filing of any application for adjustment of status," and that " '[b]rief, casual, and innocent' means a departure authorized by the Service (advance parole) subsequent to May 1, 1987 of not more than thirty (30) days for legitimate emergency or humanitarian purposes unless a further period of authorized departure has been granted in the discretion of the district director or a departure was beyond the alien's control." 8 C.F.R. 245a.1(f)–(g). The INS has also issued Operations Instructions to define further the procedural and substantive requirements of obtaining advance parole. The Operations Instructions indicate that there are six classes of persons who may be granted advance parole including aliens pursuant to "emergent or humanitarian considerations." *See* Operations Instructions § 212.5(c).

On September 2, 1994, the plaintiff sent to the INS an application for advance parole in which he stated that his father, Karam Ali, had died of paralysis on July 15, 1994, and that he wished to leave the United States in order to attend the funeral and post ritual ceremonies in Bangladesh. (Mustafa Aff. ¶¶ 3, 4). Included in his application packet was an uncertified copy of Karam Ali's death certificate and a statement from Md. Abdul Mannan that Karam Ali had died and that

---

1. The plaintiff also alleges that he is a member of the plaintiff class in *Immigration and Naturalization Serv. v. League of United Latin Am. Citizens* (*"LULAC"*), which has challenged the INS's administration of the legalization program under 8

U.S.C. § 1255a. (Pl.'s 3(g) Statement ¶ 2). For a discussion of the *LULAC* case and advance parole, see *Reno v. Catholic Social Servs., Inc.,* 509 U.S. 43, 113 S.Ct. 2485, 125 L.Ed.2d 38 (1993).

the plaintiff was his son. (Mustafa Aff.Ex. B). On September 12, 1994, the INS denied the plaintiff's request because "it does not fall within one of the classes in [Operations Instructions] 212.5(c)(1) through (5)." (Mustafa Aff.Ex. D).

## III.

■ As a threshold issue, the government contends that this Court lacks subject matter jurisdiction to review an advance parole determination made by the INS. There is, however, ample authority to support a district court's review of a denial of advance parole requests. *See Adeleke v. McNary,* No. 92 Civ. 8440, 1993 WL 17439, at *2 (S.D.N.Y. Jan. 21, 1993); *see also Khan v. Meissner,* No. 94 Civ. 7778, 1995 WL 244401 (S.D.N.Y. Apr. 27, 1995) (addressing merits of claim of unfair denial of advance parole); *Cohen v. Smith,* 534 F.Supp. 618 (S.D.Tex. 1982) (same); *Massoud v. Attorney General,* 459 F.Supp. 672 (W.D.Mo.1978) (same); 6 C. Gordon and S. Mailman, *Immigration Law and Procedure,* at 151–35 (calling the assertion by the government that a district court lacks jurisdiction to review immigration determinations "unsupportable" and finding that "it is surprising that the government occasionally resurrects it, despite numerous repulses in the courts").

■ The Court has federal question jurisdiction under 28 U.S.C. § 1331 because the plaintiff's claim arises under federal law.[2] The plaintiff argues that the denial of advance parole will prevent him from returning to the United States after a "brief and casual" trip, which is authorized by the IRCA. *See* 8 U.S.C. § 1255a(b)(3)(A). Because this claim requires an interpretation of the IRCA and the regulations promulgated thereunder, it arises under federal law, and 28 U.S.C. § 1331 provides subject matter jurisdiction and the Administrative Procedure Act, 5 U.S.C. § 702, supplies the corresponding waiver of sovereign immunity. *See Reno v. Catholic Social Servs., Inc.,* 509 U.S. 43, 56, 113 S.Ct. 2485, 2494–95, 125 L.Ed.2d 38 (1993); *Adeleke,* 1993 WL 17439, at *2.

## IV.

■ The plaintiff moves for summary judgment on the grounds that the denial of his request for advance parole by the INS was a gross abuse of discretion. He argues that he falls within the class of aliens who may be granted advance parole for "emergent or humanitarian considerations." *See* Operations Instructions § 212.5(c)(5). The defendants cross-move for summary judgment on the grounds that the INS acted well within its discretion in denying the plaintiff's application for advance parole.

■ The standard of review in challenging denial of advance parole is a highly deferential one: "[T]he INS decision 'must be viewed at the outset as presumptively legitimate and bona fide in the absence of strong proof to the contrary. The burden of proving that discretion was not exercised or was exercised irrationally or in bad faith is a heavy one and rests at all times on the unadmitted alien challenging denial of parole.'" *Khan,* 1995 WL 244401, at *2 (quoting *Bertrand v. Sava,* 684 F.2d 204, 212–13 (2d Cir.1982)); *see also Adeleke,* 1993 WL 17439, at *2–*3 (applying the abuse of discretion standard set forth in the Administrative Procedure Act); *Cohen,* 534 F.Supp. at 622–24 (same). In addition, in assessing whether the INS's decision was "arbitrary and capricious," this court is not limited to the justifications offered at the time of the denial. *See Massoud,* 459 F.Supp. at 675 (explaining that the rule against "post hoc rationalizations" does not extend to "supplemental articulations" of the reasons behind a decision to deny the plaintiff's request for advance parole).

A review of the record in this case demonstrates that the INS did not abuse its discretion in denying the plaintiff's request for advance parole. Although the INS may grant advance parole to an alien for "emergent or humanitarian considerations" if he demonstrates that "he must make an emergency trip to another country for legitimate personal reasons—for example, that he wishes to attend the funeral of an immediate

---

**2.** Because this Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331, it is unnecessary to reach the plaintiff's arguments that the Court has jurisdiction on other grounds.

family member in another country," (Ryan Decl. ¶ 7), the INS has considerable discretion in making that determination. In this case the plaintiff applied for advance parole in order to attend the funeral of his father in Bangladesh more than a month and a half after his father's death. According to John Ryan, a Supervisory District Adjudications Officer for the INS, "parole is not typically granted for 'emergent or humanitarian considerations' to an alien requesting advance parole based on the death of a family member in another country if the death of that family member occurred more than one month prior to the application for advance parole." (Ryan Decl. ¶ 8.) Moreover, the plaintiff did not submit with his application a certified copy of a birth certificate demonstrating the parental relationship, which is typically a requirement for an alien seeking to travel abroad to attend funeral services for a parent. (Ryan Dec. ¶ 9.)

It was not an abuse of discretion for the INS to require an applicant to comply with rules regarding deadlines and supporting documentation and to deny the plaintiff's application for advance parole. This was not a case of such emergency where the application of regular procedures could be considered to be an abuse of discretion. Accordingly, the plaintiff's motion for a mandatory injunction is denied, and the defendants' motion for summary judgment is granted.

### CONCLUSION

For the reasons stated above, the defendants' cross-motion for summary judgment is **granted,** and the plaintiff's motion for summary judgment is **denied.** The Clerk is directed to enter judgment dismissing this action and closing the case.

**SO ORDERED.**