NATIONAL LABOR RELATIONS BOARD *v.* FOOD
STORE EMPLOYEES UNION, LOCAL 347,
AMALGAMATED MEAT CUTTERS
& BUTCHER WORKMEN OF
NORTH AMERICA,
AFL–CIO

No. 73–370.   Argued March 18–19, 1974—Decided May 20, 1974

1

BRENNAN, J., delivered the opinion for a unanimous Court.

*Deputy Solicitor General Friedman* argued the cause for petitioner. On the brief were *Solicitor General Bork, Mark L. Evans, Peter G. Nash, John S. Irving, Patrick Hardin, Norton J. Come,* and *Linda Sher.*

*Mozart G. Ratner* argued the cause for respondent. With him on the brief were *Bernard Ries, Joseph M. Jacobs,* and *Judith A. Lonnquist. Fred Holroyd* and *Jerry Kronenberg* filed a brief for Heck's Inc., intervenor below.

MR. JUSTICE BRENNAN delivered the opinion of the Court.

The National Labor Relations Board refused to include, in a cease-and-desist order against Heck's Inc., a provision sought by respondent union, as charging party, that Heck's reimburse respondent's litigation ex-

penses and excess organizational costs incurred as a result of Heck's unlawful conduct. The Board's stated reason was that "it would not on balance effectuate the policies of the [National Labor Relations] Act to require reimbursement with respect to such costs in the circumstances here." *Heck's Inc.*, 191 N. L. R. B. 886, 889 (1971). Respondent prevailed, however, in enforcement and review proceedings in the Court of Appeals for the District of Columbia Circuit. That court enlarged the Board's order by adding provisions, paragraphs 2 (e) and (f), that Heck's "[p]ay to the Union any extraordinary organizational costs which the Union incurred by reason of Heck's policy of resisting organizational efforts and refusing to bargain, such costs to be determined at the compliance stage of these proceedings," and "[p]ay to the Board and the Union the costs and expenses incurred by them in the investigation, preparation, presentation, and conduct of these cases before the National Labor Relations Board and the courts, such costs to be determined at the compliance stage of these proceedings." 155 U. S. App. D. C. 101, 476 F. 2d 546 (1973). We granted certiorari to consider whether the enlargement of this order was a proper exercise of the authority of courts of appeals under §§ 10 (e) and (f) of the National Labor Relations Act, as amended, 61 Stat. 146, 29 U. S. C. §§ 160 (e) and (f), to "make and enter a decree . . . modifying, and enforcing as so modified" the order of the Board, 414 U. S. 1062 (1973). We reverse.

Heck's Inc. operates a chain of discount stores in the Southeast section of the country. Its resistance to union organization has resulted in some 11 proceedings before the National Labor Relations Board.[1] This case grew out of its efforts to prevent organization by respondent

---

[1] The many proceedings are cited in the opinion of the Court of Appeals, 155 U. S. App. D. C. 101, 102 n. 1, 476 F. 2d 546, 547 n. 1.

union of Heck's employees at its store in Clarksburg, West Virginia. The case was twice before the Board. In its first decision, the Board determined that Heck's violated § 8 (a)(1) of the Act, 29 U. S. C. § 158 (a)(1), by threatening and coercively interrogating employees during respondent's organizational campaign, and by conducting a nonsecret poll to ascertain employee support for the union. Further, the Board found that Heck's "flagrant repetition" of similar unfair labor practices at its other stores and its "extensive violations of the Act" in the Clarksburg store justified an inference that Heck's did not entertain any good-faith doubt concerning majority support for respondent union when the company refused to recognize and bargain with the union on the basis of authorization cards signed by a majority of employees. Accordingly, the Board found that Heck's violated §§ 8 (a)(5) and (1) of the Act, 29 U. S. C. §§ 158 (a)(5) and (1). Finally, because Heck's extensive violations were found to have made a free and fair election impossible, an order directing Heck's to bargain with the union was entered. The Board rejected, however, the union's argument that adequate relief required certain additional remedies, including reimbursement of litigation expenses and excess organizational costs incurred as a result of Heck's unlawful behavior.[2] *Heck's Inc.*, 172 N. L. R. B. 2231 n. 2 (1968).

The Court of Appeals for the District of Columbia Circuit enforced the Board's order, but remanded to the

[2] The Board also rejected respondent's requests for provisions directing the mailing of notices to employees; either a company-wide bargaining order or a shifting of the burden of proof in future cases to require Heck's to demonstrate its good faith in rejecting authorization cards; injunctions under § 10 (j) of the Act, 29 U. S. C. § 160 (j); increased access to employees; and a "make-whole" provision directing compensation to employees for collective-bargaining benefits lost as a result of the employer's unlawful conduct.

Board for further consideration of additional remedies including reimbursement of litigation expenses and excess organizational costs. 139 U. S. App. D. C. 383, 433 F. 2d 541 (1970).[3] On remand, the Board amended its original order to encompass certain supplemental remedies,[4] but again refused to order reimbursement of litigation expenses and excess organizational costs.[5] 191 N. L. R. B. 886. Although the Board found that Heck's unfair labor practices were "aggravated and pervasive" and that its intransigence had probably caused the union to incur greater litigation expenses and organizational costs, the Board's rationale, previously mentioned, was that the provision would not effectuate the policies of the Act. The Board reasoned that its "orders

[3] The remand was ordered in light of the Court of Appeals' intervening decision in *International Union of Elec., Radio & Mach. Workers* v. *NLRB*, 138 U. S. App. D. C. 249, 426 F. 2d 1243 (1970), known as the *Tiidee Products* case, in which the court had remanded for further Board consideration a union's submission that similar supplementary remedies were necessary where an employer's refusal to bargain was found to be "a clear and flagrant violation of the law," and its objections to a representation election were determined to be "patently frivolous." *Id.*, at 254, 426 F. 2d, at 1248.

[4] The Board directed Heck's to mail notices of the Board's amended order to the homes of all employees at each of Heck's store locations; to provide the union with reasonable access for a one-year period to bulletin boards and other places where union notices are normally posted; and to provide the union with a list of names and addresses of all employees at all locations, to be kept current for one year.

[5] The Board also refused to order, as sought by respondent, that notices of the Board's decision be read to assembled groups of employees; that a companywide bargaining order be issued; that the company be required to bargain whenever the union obtained an authorization card majority at other locations; that greater access to employees on company property be granted; and that a "make-whole" provision for reimbursement of dues and fees, and collective-bargaining benefits, lost as a result of the unlawful refusal to bargain, be ordered.

must be remedial, not punitive, and collateral losses are not considered in framing a reimbursement order." *Id.*, at 889 (footnotes omitted).[6] Moreover, a charging party's participation in the case is, the Board found, primarily for the purpose of protecting its private interests, whereas the Board has the primary responsibility for protecting the public interest. The Board therefore concluded that, although the public interest might also arguably be served "in allowing the Charging Party to recover the costs of its participation in this litigation," that consideration did not "override the general and well-established principle that litigation expenses are ordinarily not recoverable." *Ibid.* (Footnote omitted.)

Prior to review of its supplementary decision by the Court of Appeals, the Board issued its decision in *Tiidee Products, Inc.*, 194 N. L. R. B. 1234 (1972), in which the Board ordered reimbursement of litigation expenses in the context of a finding that an employer had engaged in "frivolous litigations." [7] The Board's opinion in *Tiidee* reasoned that industrial peace could be best achieved if "speedy access to uncrowded Board and court dockets [were] available" and therefore that an assessment of legal fees would serve the public interest by "discourag[ing] future frivolous litigation," *id.*, at 1236. The Board did not explain why those considerations had not

---

[6] In support of this proposition, the Board relied upon *Republic Steel Corp.* v. *NLRB*, 311 U. S. 7, 11–12 (1940), and *NLRB* v. *Gullett Gin Co.*, 340 U. S. 361, 364 (1951).

[7] The Board's decision in *Tiidee* was issued after supplementary proceedings following a remand from the Court of Appeals. See n. 3, *supra.* In an opinion filed April 25, 1974, the Court of Appeals, on review of the Board's supplementary decision in *Tiidee*, enforced as modified the Board's amended order. *International Union of Elec., Radio & Mach. Workers* v. *NLRB*, 163 U. S. App. D. C. 347, 502 F. 2d 349.

led it to order similar relief in this case. The Court of Appeals therefore concluded in the present case that the Board had abandoned its policy against award of litigation expenses and excess organizational costs,[8] stating:

"Although the Board in its Supplemental Decision in this case has nowhere characterized the litigation as frivolous, it has used the language of 'clearly aggravated and pervasive' misconduct; and in its original opinion it questioned Heck's good faith because of its 'flagrant repetition of conduct previously found unlawful' at other Heck's stores. It would appear that the Board has now recognized that employers who follow a pattern of resisting union organization, and who to that end unduly burden the processes of the Board and the courts, should be obliged, at the very least, to respond in terms of making good the legal expenses to which they have put the charging parties and the Board. We hold that the case before us is an appropriate one for according such relief." 155 U. S. App. D. C., at 106, 476 F. 2d, at 551.

[8] The Court of Appeals made clear that the enlargement of the Board order was based squarely on the Board's change of policy perceived to have been made by *Tiidee*. The court refused to decide the question argued by respondent union that, independently of *Tiidee*, an order of reimbursement should be directed. The Court of Appeals said:

"There are, it seems to us, obvious difficulties [in relying upon the subsidiary role of the charging party as a basis for denial of litigation expenses], certainly in the case of an employer who appears to look upon litigation as a convenient means of delaying—and thereby perhaps avoiding—the fatal day of union recognition and collective bargaining. *We need not pursue those difficulties in detail,* however, for the reason that the Board itself has subsequently departed from the rationale upon which its refusal of litigation expenses in this case is based." 155 U. S. App. D. C., at 105, 476 F. 2d, at 550 (emphasis added).

The Court of Appeals also viewed *Tiidee* as the signal of a shift in the Board's attitude toward excess organizational costs. In *Tiidee*, the Board refused to order reimbursement of excess organizational costs because " 'no nexus between [the employer's] unlawful conduct' " had been proved. *Ibid.* Since, in the instant case, the Board had indicated that Heck's violations had probably caused respondent to incur excess organizational costs, a nexus was proved and accordingly the court held that respondent was entitled to an order directing reimbursement of organizational costs.

In the circumstances of this case, the Court of Appeals, in our view, improperly exercised its authority under §§ 10 (e) and (f) to modify Board orders, and the case must therefore be returned to the Board.[9] Congress has invested the Board, not the courts, with broad discretion to order a violator "to take such affirmative action . . . as will effectuate the policies of [the Act]." 29 U. S. C. § 160 (c); see, *e. g., Golden State Bottling Co.* v. *NLRB,* 414 U. S. 168, 176 (1973). This case does not present the exceptional situation in which crystal-clear Board error renders a remand an unnecessary formality. See *NLRB* v. *Express Publishing Co.,* 312 U. S. 426 (1941); *Communications Workers* v. *NLRB,* 362 U. S. 479 (1960). For it cannot be gainsaid that the finding here that Heck's asserted at least "debatable" defenses to the unfair labor practice charges, whereas objections to the representation election in *Tiidee* were "patently frivolous," might have been viewed by the Board as putting the question of remedy in a different light. We cannot

---

[9] We thus have no occasion at this time to address the question whether the Board's broad powers under § 10 (c), 29 U. S. C. § 160 (c), to fashion remedies include power to order reimbursement of litigation expenses and excess organizational costs.

say that the Board, in performing its appointed function of balancing conflicting interests, could not reasonably decide that where "debatable" defenses are asserted, the public and private interests in affording the employer a determination of his "debatable" defenses, unfettered by the prospect of bearing his adversary's litigation costs, outweigh the public interest in uncrowded dockets.

There are, however, facial inconsistencies between the Board's opinion in this case and the *Tiidee* decision, and the Court of Appeals therefore correctly declined to resolve those inconsistencies by substituting Board counsel's rationale for that of the Board. 155 U. S. App. D. C., at 107 n. 8, 476 F. 2d, at 552 n. 8; see *NLRB* v. *Metropolitan Life Ins. Co.,* 380 U. S. 438, 444 (1965); *Burlington Truck Lines* v. *United States,* 371 U. S. 156, 168–169 (1962). The integrity of the administrative process demands no less than that the Board, not its legal representative, exercise the discretionary judgment which Congress has entrusted to it. But since a plausible reconciliation by the Board of the seeming inconsistency was reasonably possible, it was "incompatible with the orderly function of the process of judicial review," *NLRB* v. *Metropolitan Life Ins. Co., supra,* at 444, for the Court of Appeals to enlarge the Heck's order without first affording the Board an opportunity to clarify the inconsistencies.

It is a guiding principle of administrative law, long recognized by this Court, that "an administrative determination in which is imbedded a legal question open to judicial review does not impliedly foreclose the administrative agency, after its error has been corrected, from enforcing the legislative policy committed to its charge." *FCC* v. *Pottsville Broadcasting Co.,* 309 U. S. 134, 145 (1940); see *Fly* v. *Heitmeyer,* 309 U. S. 146, 148 (1940); *FTC* v. *Morton Salt Co.,* 334 U. S. 37, 55 (1948); *FPC* v. *Idaho Power Co.,* 344 U. S. 17, 20 (1952); *Konigs-*

10

*berg* v. *State Bar,* 366 U. S. 36, 43–44 (1961). Thus, when a reviewing court concludes that an agency invested with broad discretion to fashion remedies has apparently abused that discretion by omitting a remedy justified in the court's view by the factual circumstances, remand to the agency for reconsideration, and not enlargement of the agency order, is ordinarily the reviewing court's proper course. Application of that general principle in this case best respects the congressional scheme investing the Board and not the courts with broad powers to fashion remedies that will effectuate national labor policy. It also affords the Board the opportunity, through additional evidence or findings, to reframe its order better to effectuate that policy. See *FPC* v. *Idaho Power Co., supra,* at 20; *FTC* v. *Morton Salt Co., supra,* at 55. Moreover, in this case, if the Court of Appeals correctly read *Tiidee* as having signaled a change of policy in respect of reimbursement, a remand was necessary, because the Board should be given the first opportunity to determine whether the new policy should be applied retroactively.[10]

---

[10] Appellate courts ordinarily apply the law in effect at the time of the appellate decision, see *Bradley* v. *School Board,* 416 U. S. 696, 711 (1974). However, a court reviewing an agency decision following an intervening change of policy by the agency should remand to permit the agency to decide in the first instance whether giving the change retrospective effect will best effectuate the policies underlying the agency's governing act.

In its present posture the case does not, of course, present the question whether Board failure, on remand, to clarify the apparent inconsistency in its decisions would warrant reversal on review. Compare *Barrett Line* v. *United States,* 326 U. S. 179 (1945), with *FCC* v. *WOKO, Inc.,* 329 U. S. 223, 227–228 (1946). See L. Jaffe, Judicial Control of Administrative Action 587–588 (1965); Shapiro, The Choice of Rulemaking or Adjudication in the Development of Administrative Policy, 78 Harv. L. Rev. 921, 947–950 (1965).

The judgment of the Court of Appeals is reversed insofar as paragraphs 2 (e) and (f) were added to the Board's order, and the case is remanded to the Court of Appeals with direction that it be remanded to the Board for further proceedings.

*It is so ordered.*