546 F.2d 989
 93 L.R.R.M. (BNA) 2305, 93 L.R.R.M. (BNA) 2450,
93 L.R.R.M. (BNA) 2800, 178 U.S.App.D.C. 223,
79 Lab.Cas. P 11,612
 LOCAL 814, INTERNATIONAL BROTHERHOOD OF TEAMSTERS,
CHAUFFEURS, WAREHOUSEMEN, et al., Petitioners,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Karl J. Leib,
Jr., Intervenor.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
SANTINI BROTHERS, INC., Respondent.
 Nos. 74-1036, 74-1243.
 United States Court of Appeals,
District of Columbia Circuit.
 Sept. 17, 1976.
As Amended Oct. 6, 1976.
Rehearing Denied Jan. 13, 1977.
 
 Michael E. Abram, New York City, was on the supplemental brief for petitioners.
 John S. Irving, Jr., Gen. Counsel, Carl L. Taylor, Associate Gen. Counsel; Elliott Moore, Deputy Associate Gen. Counsel and Alan Banov, Atty., N. L. R. B., Washington, D. C., were on the supplemental brief for respondent.
 Karl J. Lieb, Jr., Miami, Fla., was on the supplemental brief for intervenor.
 Before BAZELON, Chief Judge, and TAMM and ROBB, Circuit Judges.
 Opinion PER CURIAM.
 
 
 1
 Dissenting opinion filed by Chief Judge BAZELON.
 
 PER CURIAM:
 
 2
 In Local 814, Teamsters (Santini Brothers, Inc.), 208 N.L.R.B. 184 (1974) the National Labor Relations Board (NLRB) affirmed without comment an administrative law judge's (ALJ) decision that a provision of Local 814's collective bargaining agreement with Santini Brothers, Inc. violated sections 8(b)(4) and 8(e) of the National Labor Relations Act, 29 U.S.C. §§ 158(b)(4), 158(e) (1970). The effect of the contested clause is to force owner-operators of tractor trailers who contracted with Santini for long distance hauling to join Local 814 or lose their contracts. On review in this court we agreed with the Board's conclusions if the owner-operators are not "employees" within the meaning of section 2(3) of the Act, 29 U.S.C. § 152(3) (1970). Local 814, Teamsters v. NLRB, 167 U.S.App.D.C. 387, 512 F.2d 564, 567 (1975). The opinion of the ALJ adopted by the NLRB in Santini had concluded that the owner-operators were not employees within the meaning of section 2(3). However, shortly after issuing its Santini decision, the Board adopted the decision of another ALJ which concluded that owner-operators who worked for another firm in the moving and storage industry were employees. Local 814, Teamsters (Molloy Brothers Moving and Storage, Inc.), 208 N.L.R.B. 276 (1974). We therefore remanded the record of Santini to the NLRB for clarification and explanation of these ostensibly inconsistent decisions. Local 814, Teamsters v. NLRB, supra, 512 F.2d at 567.
 
 
 3
 We now have before us the Board's Supplemental Decision in Santini wherein the NLRB has articulated the factual distinctions between its two decisions. These distinctions indicate that Molloy Brothers exercises greater control over its owner-operators than Santini Brothers and thus explain the different conclusions reached by the Board as to employee status. Having clarified the basis for its different results the Board has fully complied with this court's remand mandate. Local 814, Teamsters v. NLRB, supra, 512 F.2d at 567; see NLRB v. Silver Bay Local 962, 510 F.2d 1364 (9th Cir. 1975).
 
 
 4
 A majority of the Board found seven factual distinctions between Molloy and Santini.[1] Petitioner Local 814 attacks these distinctions as "essentially meaningless". Petitioner's Brief at 11. Two dissenting Board members also question both the existence and sufficiency of differences between the cases. Local 814, Teamsters (Santini Brothers, Inc.), 223 N.L.R.B. ---, --- (No. 121, at 12-13 (1976) (Members Fanning & Jenkins, dissenting).
 
 
 5
 We must keep in mind that where, as here, an agency is charged with administering a broad statutory mandate, courts must of necessity defer to agency judgment. Local 814, Teamsters v. NLRB, supra, 512 F.2d at 572 (Bazelon, C. J., concurring in part, dissenting in part); cf. NLRB v. Food Store Employees, 417 U.S. 1, 9, 94 S.Ct. 2074, 40 L.Ed.2d 612 (1974). The remand in this case was to assure that the NLRB had in fact exercised its judgment in nearly simultaneously affirming the decisions of different administrative law judges who had reached ostensibly inconsistent conclusions. The distinctions detailed in the Board's Supplemental Decision show that the NLRB has considered the facts in each case and finds them distinguishable, thereby warranting different results. We find that the Board has exercised its judgment and engaged in reasoned analysis in arriving at the different results in Santini and Molloy.
 
 
 6
 Simply because the petitioner and two Board members do not find the NLRB's arguments persuasive does not establish that the Board has failed to apply reasoned analysis in exercising its judgment. Not all those who apply their reasoning power to a given question come to the same conclusions. The right to a "reasoned analysis" is a right to a rational, considered decision not a right to a result.
 
 
 7
 Petitioner further argues that the Board's Supplemental Decision should be rejected as mere post hoc rationalization. In Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 419, 91 S.Ct. 814, 825, 28 L.Ed.2d 136 (1971) the Supreme Court held that post hoc rationalizations are an inadequate basis for review of agency decisions because they do not "constitute the 'whole record' compiled by the agency: the basis for review required by § 706 of the Administrative Procedure Act." However, although the Court acknowledged the danger of some post hoc rationalization, it nevertheless specifically approved the procedure of requesting an administrative body to provide additional explanation for an inadequately articulated decision. Id. at 420, 91 S.Ct. 814. The "post hoc rationalization" rule is not a time barrier which freezes an agency's exercise of its judgment after an initial decision has been made and bars it from further articulation of its reasoning. It is a rule directed at reviewing courts which forbids judges to uphold agency action on the basis of rationales offered by anyone other than the proper decisionmakers. Thus the rule applies to rationalizations offered for the first time in litigation affidavits, Citizens to Preserve Overton Park, Inc. v. Volpe, supra, 401 U.S. at 419, 91 S.Ct. 814, and arguments of counsel, FPC v. Texaco, 417 U.S. 380, 397, 94 S.Ct. 2315, 41 L.Ed.2d 141 (1974); NLRB v. Food Store Employees, supra, 417 U.S. at 9, 94 S.Ct. 2074.
 
 
 8
 The policy of the post hoc rationalization rule does not prohibit the NLRB from submitting an amplified articulation of the distinctions it sees between Santini and Molloy. Moreover, the logic of the rule requires it. If a reviewing court finds the record inadequate to support a finding of reasoned analysis by an agency and the court is barred from considering rationales urged by others, only the agency itself can provide the required clarification.
 
 
 9
 Having reviewed the NLRB's Supplemental Decision and petitioner's objections thereto, we conclude that the Board has sufficiently explained why the result in Santini differs from that in Molloy. We therefore approve the Board's decision in Local 814, Teamsters (Santini Brothers, Inc.), 208 N.L.R.B. 184 (1974) and direct that it be enforced in full.
 
 
 10
 So ordered.
 
 BAZELON, Chief Judge (dissenting):
 
 11
 In affirming the supplemental order of the National Labor Relations Board, the majority essentially makes two points. First, it asserts the Board engaged in reasoned analysis in arriving at opposite results in Santini and Molloy. Second, it observes that the prohibition against post hoc rationalizations does not automatically preclude affirming a clarified order. I disagree with the first assertion and, although I agree with the the second, fail to see its pertinence. The issue is not whether clarified administrative orders are ever sufficient, but whether this one is.
 
 
 12
 I dissented from the initial decision to remand the record for clarification. Having concluded from a variety of factors that the Board had failed to give the cases under consideration the necessary "hard look," I recommended a broader remand to enable the Board to reconsider "the doctrinal quicksand" in the entire area. 512 F.2d at 572. Secondarily, I hoped to persuade the Board to avoid the temptation of offering a sterile post hoc rationalization. Unfortunately, my hopes appear not to have been realized.
 
 
 13
 Judicial review of agency determinations is limited. Where the reasons for the agency's decision are clearly articulated, and the decision reached is rational,[1] judicial deference is appropriate.[2] Here, even though a majority of the Board found seven factual distinctions between Molloy and Santini there is no reasoned discussion as to why the distinctions are significant. The Board does suggest that in Molloy, unlike in Santini, there was a "layer of carrier regulation put upon the (owner-operators) beyond what was required by government regulation." (Supp. order p. 3.) However the Board never explains how substantial this layer must be in order for drivers to be considered employees rather than independent contractors or, in fact, why the extra layer imposed in Molloy distinguishes that case from Santini in light of their numerous similarities. Nor does the Board attempt to justify its results in terms of the policies of the National Labor Relations Act.
 
 
 14
 Although little would be served by once again examining the facts in depth, see 512 F.2d at 568-70 (Bazelon, C. J., concurring in part, dissenting in part), a brief glance at some of the factual distinctions relied on by the Board would be instructive. One distinction, for example, does not seem to be a distinction at all. The Board notes that the Molloy driver's manual lists punishments for such infractions as preventable accidents and dishonesty but that Santini has no such manual. Are we to conclude from this that Santini does not punish reckless or dishonest drivers? The significance of another distinction is not obvious. The Board observes that Santini has its own operating authority from the Interstate Commerce Commission, but that Molloy uses Allied Van Lines' certificate. But does this fact by itself establish that Molloy asserts greater control over the day-to-day activities of its drivers than Santini? Perhaps there are significant differences between Santini's and Molloy's right of control over their drivers, but the supplemental order does not show this to be the case.
 
 
 15
 In sum, I do not believe the Board's supplemental order should be affirmed. No two snowflakes are identical, but for most purposes are considered indistinguishable. Here the Board distinguishes two snowflakes without explaining in terms of the policies of the Labor Act why it has done so. Because other companies concerned about whether their drivers are employees or independent contractors will find no guidance in the Board's decisions, I would, as I said before, remand the record "for a thorough reconsideration of the doctrinal quicksand in this area." 512 F.2d at 572.
 
 
 
 [1]
 The NLRB concluded that Santini Brothers' control over owner-operators was much less than that of Molloy Brothers based on its findings that:
 1) Molloy required owner-operators to attend training classes going beyond governmental regulations, whereas Santini offered but did not require a training program;
 2) Molloy imposed discipline for infraction of rules beyond governmental requirements, but Santini did not;
 3) Santini's owner-operators paid for their own health insurance but Molloy assumed this cost for its owner-operators;
 4) Santini's owner-operators bear the financing costs of their trips, whereas Molloy advanced trip expenses from a reserve account of accumulated commissions and bore the risk of default by a customer;
 5) Molloy established a profit sharing plan for its owner-operators, but Santini did not;
 6) Santini only loaned owner-operators money to buy trucks at the start of its contracting operation, whereas Molloy made substantial loans to its owner-operators for various purposes;
 7) Santini has its own Interstate Commerce Commission operating authority; Molloy does not.
 Local 814, Teamsters (Santini Brothers, Inc.), 223 N.L.R.B. ---, --- (No. 121, at 4-5) (1976).
 
 
 [1]
 See, e. g., NLRB v. United Ins. Co. of America, 390 U.S. 254, 260, 88 S.Ct. 988, 19 L.Ed.2d 1083 (1968)
 
 
 [2]
 See generally, Greater Boston Television Corp. v. FCC, 143 U.S.App.D.C. 383, 444 F.2d 841, 850-52 (1970), cert. denied 403 U.S. 923, 92 S.Ct. 2233, 29 L.Ed.2d 701 (1971)