659 F.2d 1006
 108 L.R.R.M. (BNA) 2846, 92 Lab.Cas. P 13,058
 EAST BAY CHEVROLET dba Time Chevrolet, Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent.
East Bay Automotive Council, Intervenor.
EAST BAY AUTOMOTIVE COUNCIL, Cross-Petitioner,
v.
NATIONAL LABOR RELATIONS BOARD and East Bay Chevrolet dba
Time Chevrolet, Cross-Respondents.
 Nos. 79-7267, 79-7312.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Feb. 12, 1981.
Decided Oct. 22, 1981.
 
 Mark S. Ross, Littler, Mendelson, Fastiff & Tichy, San Francisco, Cal., for East Bay Chevrolet.
 David Rosenfield, Van Bourg, Allen, Weinberg & Roger, San Francisco, Cal., for East Bay Automotive.
 Edward S. Dorsey, Washington, D. C., Mark S. Ross, San Francisco, Cal. (argued), for N. L. R. B.; Elliott Moore, Washington, D. C., on brief.
 Petitions for Review and Cross-Application for Enforcement of an Order of the National Labor Relations Board.
 Before ANDERSON, NELSON, and NORRIS, Circuit Judges.
 J. BLAINE ANDERSON, Circuit Judge:
 
 
 1
 East Bay Chevrolet, the Employer, seeks review of an order of the National Labor Relations Board (the Board) which requires that any agreement reached between the Employer and the East Bay Automobile Council (the Council) shall be retroactive to July 26, 1977. The Council, on the other hand, petitions for review of the Board's order denying it costs and attorney fees. The Board has applied for the enforcement of its orders.
 
 I. FACTS
 
 2
 The Employer is an automobile dealer engaged in the selling and servicing of new and used cars. The Council is an amalgamation of four separate unions formed for the purpose of negotiating collective bargaining agreements with automobile dealerships. The four crafts that compose the Council are auto mechanics, painters, car jockeys, and new and used car sales people.
 
 
 3
 The Employer was a member of the East Bay Motor Car Dealers Association (the Association), a multi-employer group which represented its members in collective bargaining with unions. In 1972, the Association and the Council entered into a collective bargaining agreement which, for the first time, covered the four crafts under one collective bargaining agreement. When that contract expired in 1974, another collective bargaining agreement was negotiated. That contract expired on May 31, 1977.
 
 
 4
 In April of 1977, after a change in ownership, the Employer notified the Council that it was withdrawing from the Association and would, henceforth, be conducting its collective bargaining on its own behalf. The Council acquiesced in this withdrawal and proceeded to negotiate with the Employer.
 
 
 5
 At their first negotiating session on July 5, 1977, the chairman of the Council requested that the Employer sign a prepared recognition agreement which stated that the Employer acknowledged the Council and its four constituent unions "as the sole and exclusive representative of its employees in a unit appropriate for the purposes of collective bargaining." (Excerpt of Record 23). After examining the document, the attorney for the Employer made several changes, including pluralizing the words "representative" and "unit." There was no discussion about the substantive effect of these changes. The recognition agreement as modified was signed and written proposals covering the four crafts were presented by the Council. No agreement was reached, but a second meeting was scheduled.
 
 
 6
 After the July 5, 1977 meeting, the attorney for the Employer filed a petition with the Board seeking an election to decertify the Automobile Salesmens' Union as the collective bargaining representative of the sales people. The basis for his actions was his receipt of a petition signed by all the sales people stating that they did not wish to be represented by the Automobile Salesmens' Union.
 
 
 7
 At the second bargaining session on July 7, 1977, the attorney for the Employer stated that the Employer could not bargain with the Council or with the Salesmens' Union because the petition had been filed with the Board and there was independent objective evidence that the Salesmens' Union did not represent the sales people. The Employer stated that it would continue to bargain as to the three other crafts. The Council and the representatives of the other Unions objected to this arrangement and the negotiations ended. Unfair labor practice charges were subsequently filed against the Employer.
 
 
 8
 In the meantime, the members of the Council struck the various automobile dealers in the Association as well as the Employer. On July 20, 1977, the Council ended its strike against the Association members when a new collective bargaining agreement was reached.
 
 
 9
 On July 26, 1977, the Employer and the Council agreed upon a "stop-gap" resolution to their dispute. The Employer entered into a collective bargaining agreement with the Council which was limited to the mechanics, painters, and car jockeys. In addition, a reservation agreement was executed. It provided that the collective bargaining agreement covering the three other crafts was without prejudice to the dispute concerning the representative status of the Salesmens' Union.
 
 
 10
 In the subsequent unfair labor practice proceedings, the Board ruled that the Employer had violated Sections 8(a)(5) and (1) of the National Labor Relations Act (the Act), 29 U.S.C. §§ 158(a)(5) and (1), "by refusing to continue bargaining with the Council on a single-employer basis for a combined unit of its shop (auto mechanics, painters, and car jockeys) and sales employees. The Employer was ordered to immediately recognize and bargain with the Council in the four-craft unit. Further, the Board adopted the recommendation of the administrative law judge (the ALJ) and ordered that any contract reached between the Employer and the Council, "including monetary benefits to be derived therefrom, ... be retroactive to July 26, 1977, the date the Respondent (the Employer) entered into the single three-craft contract and the reservation agreement." (Excerpt of Record 10). The Board also adopted the ALJ's recommendation and denied the Council's request for costs and attorney fees.II. DISCUSSION
 
 A. Retroactivity of the Agreement
 
 11
 In its petition for review of the Board's decision, the Employer does not challenge the Board's unfair labor practice determinations, nor does it contest the propriety of the Board's order to recognize and bargain with the Council in the four-craft unit. The Employer's sole objection concerns the Board's order requiring any contract agreed upon by the parties to be retroactive to July 26, 1977. The Employer principally contends that the Board's order impermissibly establishes a substantive contract term and therefore should not be enforced. We believe the Employer's objection is well taken.
 
 
 12
 The obligation to bargain collectively "does not compel either party to agree to a proposal or require the making of a concession." 29 U.S.C. § 158(d); NLRB v. Tomco Communications, Inc., 567 F.2d 871, 884 (9th Cir. 1978). This provision in our labor laws is based upon the basic principle "that the National Labor Relations Act is grounded on the premise of freedom of contract." H. K. Porter Co. v. NLRB, 397 U.S. 99, 107, 90 S.Ct. 821, 825, 25 L.Ed.2d 146 (1970), quoting United Steelworkers v. NLRB, 389 F.2d 295, 300 (D.C.Cir.1967).
 
 
 13
 "While the parties' freedom of contract is not absolute under the Act, allowing the Board to compel agreement when the parties themselves are unable to agree would violate the fundamental premise on which the Act is based private bargaining under governmental supervision of the procedure alone, without any official compulsion over the actual terms of the contract." (footnote omitted)
 
 
 14
 H. K. Porter, 397 U.S. at 108, 90 S.Ct. at 826. Therefore, the Board may not prescribe the substantive terms of a collective bargaining agreement, either directly or indirectly. See H. K. Porter, 397 U.S. at 106, 90 S.Ct. at 825; NLRB v. Tomco, 567 F.2d at 884.
 
 
 15
 In a case similar to the present, the Board recognized its limitations and refused a request that certain contract provisions be made retroactive. In Trustees of Boston University, 228 N.L.R.B. 1008 (1977), enforced, 575 F.2d 301 (1st Cir. 1978), vacated on other grounds, 445 U.S. 912, 100 S.Ct. 1271, 63 L.Ed.2d 597 (1980), the Trustees were found to have violated section 8(a)(5) of the Act by its refusal to bargain with the union. The union requested that the Board, in addition to the usual bargaining order, issue an order making all contract provisions involving salaries or fringe benefits retroactive because of the employer's frivolous objections and refusal to bargain. The Board declined to grant such extraordinary relief, stating that:
 
 
 16
 "By its request for retroactivity of certain contract provisions, the Union in effect is asking the Board to establish the effective date of the contract with respect to these terms. Since the Board is without power to compel parties to agree to any such substantive provision of a collective bargaining agreement, we shall deny this request.[10]"
 
 
 17
 "n. 10 H. K. Porter v. NLRB, 397 U.S. 99 (90 S.Ct. 821, 25 L.Ed.2d 146) (1970)."
 
 
 18
 Id. at 1010. Thus, in Trustees, the Board acknowledged that the effective date of a collective bargaining agreement is a substantive provision and that it could not compel parties to agree to such a provision.
 
 
 19
 Here, the Board has ignored its holding in Trustees and the principles set forth in cases such as H. K. Porter and Tomco. The Board has ordered the Employer to recognize and bargain with the Council in the four-craft unit and "if an understanding is reached, embody such agreement in a signed, written contract which shall be retroactive in all respects to July 26, 1977." This order does precisely what the Board acknowledged it had no authority to do it prescribes a substantive provision, the effective date of the contract, in a collective bargaining agreement.
 
 
 20
 The General Counsel presents several arguments to justify the enforcement of the order. First, General Counsel argues that the Board's order does not establish a substantive provision of a contract. We summarily reject this contention as the Board itself in Trustees has ruled otherwise.
 
 
 21
 General Counsel also argues that in previous cases, Board orders according retroactive effect to collective bargaining agreements have been upheld. While this court has enforced orders that have given retroactive effect to collective bargaining agreements, those cases are clearly distinguishable. There, collective bargaining agreements had already been negotiated and agreed upon. The issues in those cases were whether the employer was bound by the agreement or whether the employees were covered by the agreements. See, e. g., NLRB v. Lantz, 607 F.2d 290 (9th Cir. 1979); Authorized Air Conditioning Co. v. NLRB, 606 F.2d 899 (9th Cir. 1979), cert. denied, 445 U.S. 950, 100 S.Ct. 1598, 63 L.Ed.2d 785 (1980); NLRB v. Don Burgess Construction Corp., 596 F.2d 378 (9th Cir.), cert. denied, 444 U.S. 940, 100 S.Ct. 293, 62 L.Ed.2d 306 (1979). After concluding that the employer was bound by contract or that the employees were covered by the contract, the Board ordered the employer to comply with the agreement. The retroactive order merely gave the employees the full benefit of the bargain that had already been agreed upon. The Board was not engaged in prescribing contract terms.
 
 
 22
 General Counsel further contends that even if the effective date of the contract is a substantive term, the principles of H. K. Porter are not violated. General Counsel argues that the Board may not impose terms which it believes the parties should have agreed to, but it may fashion a remedy based upon what the parties would have agreed upon but for the unfair labor practice. In essence, the General Counsel contends that we adopt the decision of the D.C. Circuit in I.U.E. v. NLRB, 426 F.2d 1243 (D.C.Cir.), cert. denied, 400 U.S. 950, 91 S.Ct. 239, 27 L.Ed.2d 256 (1970) (hereinafter referred to as Tiidee Products ). In Tiidee Products, the employer's refusal to bargain was deemed to be a clear and flagrant violation of the Act. As a remedy, the Board had merely imposed a prospective bargaining order. The D.C. Circuit believed that a more meaningful remedy was warranted. The court ruled that a "make-whole remedy" could be imposed whereby the Board could award compensatory damages "based upon a determination of what the parties themselves would have agreed to if they had engaged in the kind of bargaining process required by the Act." Id. at 1253.
 
 
 23
 We have apparently never adopted or rejected the Tiidee Products decision; see Culinary Alliance & Bartenders Union, Local 703 v. NLRB, 488 F.2d 664, 666 (9th Cir. 1973), cert. denied, 417 U.S. 946, 94 S.Ct. 3071, 41 L.Ed.2d 666 (1974). We decline to do so now as there is no indication that the Board intended to base its order upon the Tiidee Products decision. As the Supreme Court stated in NLRB v. Metropolitan Life Insurance Co., 380 U.S. 438, 443-444, 85 S.Ct. 1061, 1064, 13 L.Ed.2d 951 (1965):
 
 
 24
 "When the Board so exercises the discretion given to it by Congress, it must 'disclose the basis of its order' and 'give clear indication that it has exercised the discretion with which Congress has empowered it.' (footnote omitted) Phelps Dodge Corp. v. Labor Board, 313 U.S. 177, 197, 61 S.Ct. 845, 854, 85 L.Ed. 1271, 1284 ... the integrity of the administrative process requires that 'courts may not accept appellate counsel's post hoc rationalizations for agency action ....' (citations omitted) For reviewing courts to substitute counsel's rationale or their discretion for that of the Board is incompatible with the orderly function of the process of judicial review. Such action would not vindicate, but would 'propel the court into the domain which Congress has set aside exclusively for the administrative agency.' " (citation omitted)
 
 
 25
 We have also considered the Board's decision in Trading Port, Inc., 219 N.L.R.B. 298 (1975). In this case, the ALJ stated that his recommended order was not greatly different from a Trading Port retroactive bargaining order. In Trading Port, the union commenced a campaign to organize the employees of the employer. The union was able to get a majority of the employees to sign union authorization cards; however, due to the employer's unlawful conduct prior to the Board certification election, the union was defeated. The Board determined that the pervasiveness of the employer's unfair labor practices had made the holding of a fair election impossible and, therefore, a bargaining order was warranted. The employer was ordered to recognize and bargain with the union. However, instead of the typical prospective bargaining order which operated only from the date of the Board's decision, the Board granted a retroactive bargaining order. The order provided that the employer's obligation to bargain with the union "commence(s) as of the time the employer has embarked on a clear course of unlawful conduct or has engaged in significant unfair labor practices to undermine the union's majority status." Id. at 301.
 
 
 26
 In fashioning the remedy, the Board was concerned that in some instances the prospective bargaining order "left unremedied an employer's unilateral changes in working conditions made after a union had established its majority status." Id. The retroactive bargaining order, it was hoped, would " 're-establish the conditions as they existed before the employer's unlawful campaign' and not place a union in a disadvantaged position." Id.
 
 
 27
 It is evident that the Trading Port bargaining order does not compel the parties to agree to any terms in the contract. It is only the obligation to bargain which is made retroactive. Thus Trading Port does not support the Board's order in this case.
 
 
 28
 We conclude that the Board's order establishing the effective date of the contract cannot be enforced as it compels the parties to agree to a substantive term of the contract. We, therefore, remand this portion of the Board's order to allow the Board to impose appropriate remedies.
 
 B. Costs and Attorney Fees
 
 29
 The Council argues that the Board erred in not granting its request for litigation costs and attorney fees. We disagree. Congress has invested the Board with broad discretion in fashioning remedies to effectuate the policies of the Act in light of the circumstances of each case. NLRB v. Food Store Employees Union, Local 347, 417 U.S. 1, 8, 94 S.Ct. 2074, 2079, 40 L.Ed.2d 612 (1974); Graphic Arts International Union, Local No. 280 v. NLRB, 596 F.2d 904, 910 (9th Cir. 1979). The Board has adopted a policy of awarding litigation expenses only where the defenses asserted by the employer in refusing to bargain are totally without merit or frivolous. Hecks, Inc., 215 N.L.R.B. 765 (1974). We are satisfied that the Board did not abuse its discretion in affirming the ALJ's determination that the Employer had not engaged in litigation totally without merit. A defense like the one involved in this case, which rests upon a credibility determination, is not frivolous. Id.
 
 
 30
 The Council contends that the issue should nevertheless be remanded to the Board because it failed to discuss the issue. However, the request for costs and attorney fees was only ancillary to the major questions presented. Omission of a discussion of ancillary issues does not warrant remand. J. P. Stevens & Co., Inc. v. NLRB, 612 F.2d 881, 883 (4th Cir.), cert. denied, --- U.S. ----, 101 S.Ct. 315, 66 L.Ed.2d 145 (1980).
 
 III. CONCLUSION
 
 31
 The Employer's petition for review is GRANTED. The Board's petition for enforcement of the remedial order is DENIED. The case is remanded to the Board for reconsideration of a remedial order in light of this opinion.
 
 
 32
 The Board's order denying costs and attorney's fees to the Council is AFFIRMED.