NIRO ATOMIZER, INC., a Maryland corporation, Plaintiff,

v.

UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, REGION IV, Jack E. Ravan, Regional Administrator of the United States Environmental Protection Agency, Region IV, and The City of Key West, a municipal corporation of the State of Florida, Defendants.

No. 87–10068–CIV.

United States District Court,
S.D. Florida,
Miami Division.

March 31, 1988.

Allen H. Fein, Miami, Fla., for plaintiff.

Assistant U.S. Atty. Richard Harrison, U.S. Attorney's Office, Miami, Fla., for defendants.

## ORDER REMANDING CAUSE TO EPA

JAMES LAWRENCE KING, Chief Judge.

Defendant Environmental Protection Agency ("EPA") and Niro Atomizer, Inc. ("Niro") file cross-motions for summary judgment,[1] in a case involving the procurement of a sludge incinerator system to be used in the City of Key West's ("City") under construction sewage treatment plant. After careful consideration of this matter the court remands this action back to the Agency for further consideration in light of this opinion.

## I. FACTS AND PROCEDURE

Niro brought this action to this court seeking review of the Agency's final determination of a bid protest which was ad-

---

1. Plaintiff Niro filed its motion for summary judgment after the court's hearing on the matter. The court, at the oral argument informed the parties that it was inclined to treat Niro's response to EPA's motion for summary judgment as a cross-motion for summary judgment as both parties had fully and carefully briefed the substantive issues in this action. Counsel for EPA indicated that she would not object to treating Niro's response as a cross-motion for summary judgment. She represented to the court that this issue would better be resolved through the summary judgment process as the issues involved were predominately legal. Niro subsequently filed its motion for summary judgment, adopting the arguments and authority cited in its Response to EPA's summary judgment motion.

verse to Niro. EPA administers construction grant programs under the Clean Water Act, 33 U.S.C. § 1281, *et seq.*, to assist eligible grantees in the construction of wastewater treatment facilities. The City is under a court order to build a sewage treatment plant and was the recipient of a substantial grant from EPA pursuant to the Clean Water Act.

The bid winning general contractor, Danis/Shook selected Zimpro, Inc. ("Zimpro") as its pre-qualified supplier for the fluid bed incineration system and selected Niro as its non-pre-qualified supplier of the system. Pre-qualified suppliers were those companies that the EPA decided were capable of meeting all the specifications of the procurement bids and could be selected by the general contractors submitting bids without any more approval by either EPA or the City. Non-pre-qualifed suppliers first needed recipient (City) approval, pursuant to EPA regulations in order to be used by the recipient. The City selected Niro as the sludge incinerator supplier and Zimpro protested pursuant to 40 C.F.R. 33.1105, (1987) et seq.

As a result of Zimpro's protest, the City held a protest procedure, which included written and oral presentations from Niro and Zimpro. On November 12, 1986, the City issued its decision in Niro's favor. The City concluded: (1) that Zimpro's protest was untimely; (2) that Zimpro lacked standing; and (3) that on the merits of Zimpro's protest, Niro's bid was responsive and materially completed.

The City discussed at length the merits of Zimpro's protest. It concluded that Niro's submittal contained all material information and it relied on the expert judgment of the City's consulting engineering firm, CH2M HILL, which found the purported deviations to be only minor irregularities. The City in its decision stated in detail its reasoning as to why the alleged discrepencies were immaterial. *Id.* at 6–15. Significantly, the City found that Zimpro was unable to support its contentions with competent evidence on the issue of responsiveness and Niro's alleged material noncompliance. City's Decision at 6 & n. 2.

Zimpro timely moved for reconsideration of the City's decision. The City issued, on November 26, 1986, its decision on Zimpro's motion for reconsideration. In that decision the City reaffirmed its earlier decision on all three grounds. Both City decisions carefully evaluated all the evidence presented.

On the merits of Zimpro's motion for reconsideration, the City again found that the alleged deviations were not substantial. *See* City's decision of November 26, 1986 at 8 (distinguishing *Prestex, Inc. v. United States,* 320 F.2d 367, 162 Ct.Cl. 620 (1963) (*Prestex* was the case the government in its motion for summary judgment most relied on for the proposition that a supplier must comply with all material specifications)). The City again reiterated the fact that Zimpro completely failed to demonstrate how Niro's incinerator design did not meet all material specifications. Further, the City found the affidavit of Frank Greb, submitted by Zimpro to bolster its position on the motion for reconsideration, was "without substantiation." City's decision on motion for reconsideration at 8.

In response to the unfavorable decision Zimpro appealed to the Agency for review of the City's decision. EPA reviewed the City's decision and reversed the City on all three grounds. Niro filed suit in this court appealing the Agency's decision and seeking an injunction against the City. The court granted a temporary injunction, barring the City from awarding the contract to Zimpro. *See* January 8, 1988 Order. EPA now moves for summary judgment and, for the reasons stated above, the court treats Niro's response as a cross-motion for summary judgment.

## II. DISCUSSION

This court, when reviewing Agency determinations, usually limits its scope of review to determining whether the EPA's decision was arbitrary, capricious, or an abuse of discretion. 5 U.S.C. § 706. In this instance, however, the court does not reach that question because: (1) the court concludes that the EPA deviated from its usual standard for reviewing a recipient's

decision regarding protests from subcontractors and (2) that the EPA Administrator in applying this novel *sua sponte* review, relied on facts, in important instances, without disclosing the ground on which he rested.

The Court finds that EPA applied a substantially new standard of review in this action, i.e., a *sua sponte* review of the record, including documents that were not in the record. Ironically, both Zimpro and Niro agree that the EPA's own agency decisions have interpreted the Agency's standard of reviewing a recipient's (the City of Key West) decision, in light of a rational basis test. 40 C.F.R. 33.1145(f) (1987). *See* Zimpro's protest appeal at 7–8 (citing *Monterey Regional Water Pollution Control Agency, California,* (EPA Region IX, December 17, 1985) (Protest of Dillingham Construction N.A., Inc.); *County of Erie, New York,* (EPA Region II, August 16, 1984), (Protest of Amadori Construction Co.); *See also* Niro's response to motion for summary judgment at 12–13 (citing and quoting *City of Lewes, Deleware,* (EPA Region III, July 19, 1985) (Protest of Mixing Equipment Company, Inc.) (citing cases at 2). *Accord Lake Accotink Park,* (Protest of E.E. Lyons Construction Co., Inc.) (February 22, 1985) (new issues may not be raised for the first time on appeal).

In contrast to EPA's own established standard the decision reversing the City's decision merely asserts, without supporting law, that EPA has:

> *sua sponte* review where questionable procurement practices appear to have occured. *Sua sponte* reviews are highly appropriate where a recipient awards a contract in violation of the provisions of its own Solicitation for Bids. Hence, EPA clearly has authority to consider the merits of this protest appeal irrespective of any question of standing.

EPA's decision at 12. The EPA in its summary judgment motion relies on 40 C.F.R. 33.115 and 33.1145(h). At oral argument,

upon repeated questioning from the bench for specific authority, the EPA could only cite to 33.1145(i). While the government's position may or may not be correct, the court finds that the Agency has taken a substantially different position inconsistent with those Agency decisions discussed above.

■ When an administrative agency makes a substantial change in its policy or procedure, the proper role of a reviewing court is to remand the action to the agency. *See N.L.R.B. v. Food Store Employees Union, Local 347,* 417 U.S. 1, 9–10, 94 S.Ct. 2074, 2079–80, 40 L.Ed.2d 612 (1974). The court, at this time, concludes that the more prudent course to follow in this action is to allow the EPA the opportunity to clarify its position, or if the Agency chooses, to apply its well-established rational basis test, when reviewing the recipient City's decision.

The court must also remand this action because the court cannot determine from the EPA decision, what factual bases the Administrator relied upon in making his decision. Many examples of ambiguity exist on important factual issues. For example, the Administrator concludes: "The sand consumption rate affects the fluiding technique and the height and diameter of the incinerator shell. That in turn has a fundamental impact on the incinerator design and the cost of construction." EPA's decision at 5. The decision does not state how that conclusion is derived. When discussing the sand consumption issue the Administrator merely states that "Zimpro submitted uncontradicted evidence that the cost of designing and constructing an incinerator that meets the published 7 pound standard exceeds the cost of meeting the 8.33 pound standard by more than $75,-000." *Id.* at 14. This court cannot determine, without more, whether this "uncontradicted evidence" is the subsequential supplemental affidavits of Mr. Goldbach and the second Greb affidavit submitted with Zimpro's protest to the EPA,[2] or de-

---

2. If the Agency were following its usual course of review, these affidavits would be outside of the record and not subject to review. Niro

strenuously argues that the Administrator in fact relied upon these affidavits and, therefore, Niro was denied its due process right to chal-

terminations made independently by EPA personal ("EPA has independently considered the potential cost differential between the two specifications...." *Id.*). And when discussing the skin temperature issue the Administrator's cursorily found, without analysis, that Niro's agreeing to meet the specifications constituted an admission of a material deviation. *Id.* at 14–15. These examples illustrate a pattern of insufficient findings, from which this court could not make a reasoned decision. This court is concerned that if the EPA is considering evidence outside of the City's record, Niro may not have had an opportunity to sufficiently challenge that evidence.

Thus, the court concludes that this action must be sent back to the Agency in order for the EPA to make a determination based on its own procedures, or to clearly enunciate that the Agency is changing its usual standard of review of recipient protest decisions. If the Agency, as of this action, is changing its well established review procedures, and relying on subsequential affidavits and/or information in its decision, then it must give Niro notice of its intent to so rely, and allow Niro the opportunity to rebut.

Accordingly, after a careful review of the record, and the Court otherwise being fully advised, it is

ORDERED and ADJUDGED that plaintiff Niro's cross-motion for summary judgment be, and the same is hereby, GRANTED to the extent that this action is REMANDED to the Agency, to make its determination of Zimpro's protest based on this court's opinion as stated above.

ORDERED and ADJUDGED that defendant EPA's motion for summary judgment be, and the same is hereby, DENIED.

lenge this information. Niro asserts that it was, in essence, surprised by the submission of these documents because in the normal Agency review of recipient protest decisions this evidence would not be reviewable. *See* 40 C.F.R. 33.-115(a). The court has already stated above, that it cannot tell from the EPA decision if the Administrator, in fact, relied upon these affidavits as Niro insists.