Boulanger v. NH Dep't of Corr          CV-95-572-SD  03/10/97

**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF NEW HAMPSHIRE**


Gerard Boulanger

          v.                                    Civil No. 95-572-SD

Paul Brodeur, Commissioner,
 New Hampshire Department
 of Corrections;
Michael J. Cunningham, Warden,
 New Hampshire State Prison


**O R D E R**


     Gerald Boulanger, currently incarcerated at the New
Hampshire State Prison (NHSP), brings this civil rights action
against defendants Paul Brodeur, Commissioner of the New
Hampshire Department of Corrections, and Michael J. Cunningham,
Warden of NHSP.  On May 14, 1996, this court approved Magistrate
Judge Muirhead's Report and Recommendation denying plaintiff's
original motion for temporary restraining order and/or for
preliminary injunction.

     Presently before the court are defendants' motion to dismiss
(document 20) and defendants' motion for partial summary judgment
(document 20.1).  Plaintiff pro se objects to both motions.  Also
before the court is plaintiff's second motion for temporary
restraining order and/or preliminary injunction (document 22), to
which defendants object.

## Background

On June 16, 1996, defendant Cunningham issued a memorandum stating the penalty for using drugs while in prison. Prison Drug Standard (attached to defendants' answer as Exhibit A). The memorandum stated, inter alia, that inmate drug use could result in revocation of visitation privileges. Id. Such portion of the memorandum read as follows:

> Effective immediately, any inmate found in possession of drugs, or whose urine test is positive for drugs, or who refuses to submit to a urine test and who has been found guilty at a disciplinary hearing, will have his visits suspended for one year.

Id.

On August 28, 1995, Boulanger pled guilty to positive THC[1] results on a urine test. Complaint ¶ 9. Boulanger was told that the punishment for his guilty plea would be 100 hours of extra duty, 50 days of loss of canteen time, and 10 days of punitive segregation. Id. ¶ 8. He was not told at the time he pled guilty that he would lose visiting privileges for one year. Id. ¶ 14. He claims he was not aware that his visiting privileges had been revoked until October 26, 1995, when a friend wrote to him stating that prison officials refused to allow her to visit

---

[1]THC stands for tetrahydrocannabinol, the active principle of marijuana. DORLAND'S ILLUSTRATED MEDICAL DICTIONARY 256, 1692 (28th ed. 1994).

2

with him two days prior.  Id. ¶ 12.

On December 20, 1995, the Prison Drug Standard was revised.
Revised Prison Drug Standard (attached to defendants' answer as
Exhibit B).  The new standard changed the punishment for
violation of the standard from one year's revocation of visiting
privileges to one year's revocation of visiting privileges with
Category 2 visitors (friends) and 30 days' revocation of visiting
privileges with Category 1 visitors (parents, spouse, children,
siblings).  Id.

The court assumes that Boulanger's punishment regarding
visitation was the following: revocation of Category 2 visits for
one year and revocation of Category 1 visits from August 28,
1995, to December 20, 1995, when the standard was revised.


## Discussion

### I.  Motion for Judgment on the Pleadings[2]

#### A.  Judgment on the Pleadings Standard

Any party may move for judgment on the pleadings after the
pleadings are closed but within such time as not to delay the
trial.  Rule 12(c), Fed. R. Civ. P.  "The standard for evaluating
a Rule 12(c) motion for judgment on the pleadings is essentially

---

[2]As defendants filed their motion to dismiss after filing an
answer to the complaint, the court is treating same as a motion
for judgment on the pleadings.

3

the same as the standard for evaluating a Rule 12(b)(6) motion." Metromedia Steakhouses Co., L.P. v. Resco Management, 168 B.R. 483, 485 (D.N.H. 1994) (citation omitted). When reviewing either type of motion, "the court must accept all of the factual averments contained in the complaint as true and draw every reasonable inference helpful to the plaintiff's cause." Sinclair v. Brill, 815 F. Supp. 44, 46 (D.N.H. 1993) (citing Santiago de Castro v. Morales Medina, 943 F.2d 129, 130 (1st Cir. 1991)). Accord Rivera-Gomez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1988).

Judgment may not be entered on the pleadings "'"unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."'" Rivera-Gomez, supra, 843 F.2d at 635 (quoting George C. Frey Ready-Mixed Concrete, Inc. v. Pine Hill Concrete Mix Corp., 554 F.2d 551, 553 (2d Cir. 1977) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957))).

### B. Counts 1-5: Claims under 42 U.S.C. § 1983

The section 1983 claims within the complaint allege that defendants violated plaintiff's First, Eighth, and Fourteenth Amendment rights. The magistrate judge has previously determined that plaintiff's civil rights claims are premised on defendant's

(1) denial of plaintiff's visitation rights, (2) failure to provide plaintiff with a copy of his disciplinary report, and (3) failure to comply with required and dictated prison policies, procedures, and directives. See Report and Recommendation at 1, Apr. 22, 1996.

### 1. The First Amendment

Boulanger claims that the revocation of his visiting privileges for one year is a violation of his right to association guaranteed by the First Amendment. "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." Pell v. Procunier, 417 U.S. 817, 822 (1974). Pell concerned a challenge to the constitutionality of a prison regulation forbidding media visits with specific inmates. The court found that while it would be unconstitutional for prison officials to prohibit all expression or communication by inmates, "security considerations are sufficiently paramount in the administration of the prison to justify the imposition of some restrictions on the entry of outsiders into the prison for face-to-face contact with inmates." Id. at 827. The Court concluded that the prison regulation restricting media visits did not violate the First Amendment as

5

applied to inmates.  Id. at 827-28.

Under Pell, the NHSP may restrict Boulanger's constitutional right of association as long as the purpose of the restriction is reasonably related to the furtherance of legitimate correctional objectives, such as security, or the maintenance of order, or rehabilitation.  See id. at 827.  Cf. Stow v. Grimaldi, 993 F.2d 1002, 1004 (1st Cir. 1993) (discussing constitutionality of censoring prisoners' outgoing mail).  Furthermore, courts shall give great deference to the judgment of prison officials in promulgating regulations to further these objectives.  See Pell, supra, 417 U.S. at 827.

The court finds and rules that the suspension of visitation privileges did not violate Boulanger's First Amendment rights. The prison's policy on visits was obviously enacted in an effort to curb known drug users' access to drugs.  In a June 16, 1995, memorandum sent to the inmates about the drug policy, the warden states that, based on his experience and investigation, he concluded that when drugs are found inside the prison, they were brought in through the visiting room.  Thus, a rule suspending visitation privileges of those found to be using drugs is both reasonable and rationally related to the legitimate prison objective of staunching the flow of drugs in through the prison gates.

6

Boulanger argues, in essence, that the policy was arbitrary or irrational as applied to him because he had not had a visit "for months" prior to testing positive for drugs, and no hearing officer had ever determined that he had received drugs from a visitor. See Objection at 6. However, the court finds that when the prison officials are accorded deference, the policy was reasonably applied to Boulanger. Assuming, arguendo, that Boulanger did receive the drugs from another inmate, it is certainly reasonable for prison officials to seek to block other avenues open to Boulanger to receive drugs. In addition, not only was the policy reasonably related to a legitimate prison objective, but it also left open alternative channels of communication to Boulanger, such as the telephone lines and the United States mail.

Accordingly, as no First Amendment right has been violated, Boulanger's claims under the First Amendment are dismissed.

### 2. The Eighth Amendment

Boulanger also claims that the revocation of his visitation privileges constitutes cruel and unusual punishment in violation of the Eighth Amendment.

On this question, this court concurs with the conclusion of the magistrate judge that "a restriction on visitation is not a

7

condition of confinement so reprehensible as to be considered inhumane under contemporary standards or one, for that matter, that deprives the plaintiff of a minimal civilized measure of the necessities of life." See Report and Recommendation, supra, at 9 (citing Hudson v. McMillian, 503 U.S. 1, 6 (1992); Wilson v. Seiter, 501 U.S. 294, 298 (1991)). See also Jackson v. Meachum, 699 F.2d 578, 585 (1st Cir. 1983) (holding that inmate denied contact with other inmates as a result of being placed in segregated confinement did not have an Eighth Amendment claim). Boulanger's deprivation of one year's visitation with friends and four months' visitation with family is hardly the type of extreme and extraordinary punishment that constitutes an Eighth Amendment violation. Furthermore, the facts also do not show that defendants acted with the requisite "deliberate indifference" to Boulanger's rights. Accordingly, Boulanger's claims under the Eighth Amendment are dismissed.

### 3. Fourteenth Amendment

Finally, Boulanger claims that prison officials violated his due process rights by failing to notify him that his guilty plea for drug use would result in a loss of visitation privileges for one year; by failing to comply with required and dictated prison policies, procedures, and directives (PPDs); and by failing to

8

provide him with a copy of his disciplinary report. The court construes Boulanger's argument to be that his procedural due process rights were violated.

In the Report and Recommendation addressing plaintiff's request for a temporary restraining order, the magistrate judge discussed at length Boulanger's procedural due process claim. The magistrate judge found, and this court agrees, that plaintiff has not demonstrated that he has a protected liberty or property interest with which the state has interfered, a necessary precondition to stating a procedural due process violation. See Report and Recommendation, supra, at 6-8. Liberty interests can derive either from the Due Process Clause itself or from the laws of the states. Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989). The Supreme Court has specifically held that an inmate's interest in visitation is not guaranteed by the Due Process Clause. See id. at 460.

Boulanger argues that his visiting privileges are protected by a liberty interest created by state regulations, including PPDs. The inquiry into whether a state law conveys a liberty interest upon a prisoner is now governed by Sandin v. Conner, ___ U.S. ___, 115 S. Ct. 2293 (1995). In Sandin, the Court held that state-created interests would be limited to freedom from restraints which impose "atypical and significant hardship" on

the inmate in relation to the "ordinary incidents of prison life." Id. at ___, 115 S. Ct. at 2300. The court went on to note that "discipline by prison officials in response to a wide range of misconduct falls within the expected parameters of the sentence imposed by the court." Id. at ___, 115 S. Ct. at 2301. No longer are prisoners encouraged to "comb regulations in search of mandatory language in which to base entitlements to various state-conferred privileges." Id. ___, 115 S. Ct. at 2299.

Boulanger's loss of visitation for one year as punishment for his drug use while incarcerated does not impose an "atypical and significant hardship" upon him in relation to the ordinary incidents of prison life such as to give rise to a protected liberty interest. Boulanger's contact with members of the community outside the prison walls was not completely restricted. He was able to visit with family members after four months and was able to maintain relationships with friends and family via letter or telephone. This type of discipline for drug use resides soundly within the "expected parameters" of Boulanger's sentence. Indeed, courts have found, on much more sympathetic facts, that the prisoner did not possess a liberty interest. See, e.g., Dominique v. Weld, 73 F.3d 1156, 1159-61 (1st Cir. 1996) (finding that prisoner's removal from work release program and transfer to medium security facility did not work atypical

10

and significant hardship on inmate so as to create liberty interest).

Having found that Boulanger did not have a protected liberty interest, the court need not determine whether he received the process that was due him. Accordingly, the court finds and rules that Boulanger's claims under the Fourteenth Amendment must be dismissed.[3]

C. Count 6: Claims under 18 U.S.C. §§ 241, 242

Boulanger claims defendants violated 18 U.S.C. § 241 (conspiracy against rights of citizens) and 18 U.S.C. § 242 (deprivation of rights under color of law).

These provisions govern the institution of criminal proceedings, but do not provide for a civil remedy. Thus they do not give rise to a civil action for damages. See Cok v. Cosentino, 876 F.2d 1, 2 (1st Cir. 1989). Accordingly, Boulanger's claims under Count 6 of his complaint must fail.

II. Motion for Temporary Restraining Order and/or Preliminary Injunction

---

[3]The court further notes that, to the extent Boulanger argues that a liberty interest in visitation stems from the Laaman Consent Decree, the court finds that the drug policy as applied to plaintiff comports with the sections of the decree cited by defendants.

11

In his motion for temporary restraining order and/or preliminary injunction, Boulanger claims prison officials have been harassing him in retaliation for his filing suit against the prison and have confiscated his legal materials. To the extent Boulanger's motion was filed as part of his current suit against the prison, it must be denied because the current suit is disposed of by means of this order. To the extent the motion is filed independently of the original suit against the prison, it shall also be dismissed, without prejudice, pending Boulanger's filing of a formal complaint against the prison alleging an independent cause of action.

## Conclusion

For the reasons set forth above, the court grants defendants' motion for judgment on the pleadings (document 20), but denies defendants' motion for partial summary judgment (document 20.1) as moot. As to plaintiff's motion for temporary restraining order and/or preliminary injunction (document 22), such motion is denied without prejudice. The clerk shall close

12

this case and enter judgment accordingly.

SO ORDERED.

_____
Shane Devine, Senior Judge
United States District Court

March 10, 1997

cc:   Gerard J. Boulanger, pro se
      Martin P. Honigberg, Esq.