**PUBLIC COPY – SEALED INFORMATION DELETED**

# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued April 7, 2026                    Decided June 12, 2026

No. 25-1050

MARY TRONGONE,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE,
APPELLEE

———

Appeal from the United States Tax Court

———

*Mary Trongone*, pro se, filed the brief for appellant.

*Marie E. Wicks*, Attorney, U.S. Department of Justice, was on the brief for appellee. With her on the brief were *Brett A. Shumate*, Assistant Attorney General, and *Michael J. Haungs*, Attorney. *Bruce R. Ellisen*, Attorney, entered an appearance.

*Allemai Dagnatchew*, Student Counsel, argued the cause for *amicus curiae* to assist the court. With her on the briefs were *Erica Hashimoto*, appointed by the court, *John H. Peng*, Supervising Attorney, and *Eva Kahan*, Student Counsel.

**PUBLIC COPY – SEALED INFORMATION DELETED**

Before: HENDERSON, MILLETT and GARCIA, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* HENDERSON.

KAREN LECRAFT HENDERSON, *Circuit Judge*[1]: Mary Trongone (Trongone) filed a whistleblower application with the Internal Revenue Service (IRS) alleging that two taxpayers violated the Internal Revenue Code.  The conduct that she reported spanned from 2004 to 2012.  She also asked the IRS to account for similar conduct in years postdating her allegations—specifically, tax years 2013 through 2017—when issuing her an award.  As it turned out, the IRS had already begun investigating much of the conduct Trongone reported.  And it successfully collected proceeds from both target taxpayers.  The IRS's Whistleblower Office (WBO) nevertheless denied her claim, determining that the IRS had not collected any proceeds *based on* her application.  The IRS concluded that it had already known about most of the conduct Trongone identified.  It also noted that it had set aside much of Trongone's application as "tainted"—*i.e.*, containing information that is privileged or was unlawfully obtained.  And it reasoned that it would not have relied on tainted information when auditing the target taxpayers for tax years 2013 through 2017.

Trongone sought review from the Tax Court.  Because the IRS submitted an administrative record that was largely silent as to 2013 through 2017, Trongone asked the Tax Court to supplement the record or allow discovery for those years.  The

---

[1] **NOTE**: Portions of this opinion contain **Sealed Information**, which has been redacted.

**PUBLIC COPY – SEALED INFORMATION DELETED**

court denied her request and entered summary judgment for the IRS.

We reverse. The administrative record does not support the IRS's decision for tax years 2013 through 2017. The agency decided that Trongone's application could not have aided its investigation for those years because her application was tainted. But the existing record does not support that rationale. And the IRS's decision to rely on that unsupported rationale rather than conduct a reasonable inquiry into the merits of Trongone's application was arbitrary and capricious. Finding the IRS's determination for those tax years unreasoned, we reverse the decision of the Tax Court and remand for proceedings consistent with this opinion.

## I. BACKGROUND

### A

Since 1867, the Treasury Department has enjoyed authority to grant awards to whistleblowers who report noncompliance with the tax laws. Act of Mar. 2, 1867, ch. 169, § 7, 14 Stat. 471, 473. For most of its existence, the regime was fully discretionary. *Whistleblower 14106-10W v. Comm'r*, 137 T.C. 183, 186 (2011). But that discretion fostered complaints that the system was "arbitrary and inconsistent." *Kennedy v. Comm'r*, 142 F.4th 769, 772 (D.C. Cir. 2025) (quoting *Whistleblower 11332-13W v. Comm'r*, 142 T.C. 396, 400 (2014)). In reply to the criticism, the Congress amended the statutory framework in 2006, providing mandatory awards if the IRS "proceeds with any administrative or judicial action" and collects proceeds therefrom "based on information brought to [its] attention" by the whistleblower. Tax Relief and Health Care Act of 2006, Pub. L. No. 109-432, sec. 406, § 7623(b)(1),

**PUBLIC COPY – SEALED INFORMATION DELETED**

120 Stat. 2922, 2958.  It also established the IRS WBO and charged it with reviewing whistleblower claims and issuing award determinations.  *Id.* sec. 406, 120 Stat. at 2958–60; *see Est. of Insinga v. Comm'r*, 149 F.4th 709, 713–14 (D.C. Cir. 2025).

To claim an award, a whistleblower files a Form 211. *Submit a Whistleblower Claim for Award*, Internal Revenue Serv. (Dec. 9, 2025), https://www.irs.gov/help/submit-a-whistleblower-claim-for-award [https://perma.cc/ZN3U-X8NG].[2] Upon receipt, the WBO conducts a preliminary review to decide whether to "reject" the Form 211 for lack of colorable claim or some other facial defect.  *Van Bemmelen v. Comm'r*, 155 T.C. 64, 81 (2020); *accord* Treas. Reg. § 301.7623–3(c)(7).  If the WBO does not reject the Form 211, it forwards the application to an operating division for further review. *Kennedy*, 142 F.4th at 773.

A subject-matter expert (SME) typically performs the relevant operating division's first-cut review.  Internal Revenue Manual (IRM) pt. 25.2.1.4.1 (May 28, 2020).  The SME decides whether to forward the application to an exam team or, conversely, recommend denial of the application.  *Id.* pt. 25.2.1.4.1(5).  The SME also determines whether the application contains "tainted" information—*i.e.*, "information that was illegally obtained by the whistleblower, or subject to a valid claim of privilege."  *Kennedy v. Comm'r*, 121 T.C.M. (CCH) 1008, 1009 n.4 (2021) (quoting IRM pt. 25.2.1.4.3(3) (Jan. 11, 2018)), *aff'd in part and dismissed in part*, 142 F.4th 769.  The operating division may not rely on tainted information; instead, it returns any such information to the

---

[2] That form's full title is "Application for Award for Original Information."  *Whistleblower Claim for Award*, supra.

**PUBLIC COPY – SEALED INFORMATION DELETED**

WBO. IRM pt. 25.2.1.4.3(4). A whistleblower whose application is rejected or denied—on the basis of tainted information or otherwise—may seek review in the Tax Court. 26 U.S.C. § 7623(b)(4).

**B**

In October 2012, Trongone filed a Form 211 seeking a whistleblower award. She alleged that two target taxpayers— a corporation and its majority shareholder, whom we refer to respectively as Taxpayer 1 and Taxpayer 2—had underpaid their taxes at various times from 2004 to 2012. Trongone submitted a cover letter explaining her allegations and attached nineteen pages of supporting documents.

Upon receiving Trongone's application, the WBO assigned an analyst to review it. The analyst concluded that the application was not facially defective and forwarded it to an IRS operating division. The SME conducting the first-cut review, however, noticed something amiss: Trongone's application contained documents internal to Taxpayer 1, notwithstanding Trongone had never worked there. The SME accordingly noted that the documents might be tainted and planned to meet with Trongone to conduct a "taint review." J.A. 124–25. But, for reasons that the parties dispute, that meeting never took place. The SME therefore treated the documents attached to Trongone's Form 211 as tainted and returned them to the WBO. He nevertheless forwarded Trongone's Form 211 itself, as well as the accompanying cover letter, to an IRS exam team.

The exam team, as it turned out, had already begun auditing Taxpayer 1 for tax years 2011 and 2012. It had planned to audit Taxpayer 2 for those years as well. When the

**PUBLIC COPY – SEALED INFORMATION DELETED**

exam team completed those audits, it forwarded two forms to the WBO describing the extent to which it had relied on Trongone's application. The forms indicated that the team had already begun auditing or had planned to audit the target taxpayers and that Trongone's application had not contributed to the audits.

Alongside those forms, the exam team provided detailed narratives describing each audit. The narratives contained a step-by-step explanation of the reasons Trongone's application had not contributed to the audits. The narratives reflected, for example, Trongone's allegation that Taxpayer 2 had failed to report personal income on bonuses totaling more than $19 million. But they also reflected that the IRS had identified the personal-income issue five months before the exam team received Trongone's application.

Based on those forms and supporting documents, a WBO analyst drafted a short memo describing the role Trongone's application had played in the audits. In the memo, the analyst explained why, for each issue she had identified, Trongone's application did not contribute to the audits: either the exam team had not issued any adjustments or documentary evidence revealed that the IRS had known the facts underlying her allegations well before it received her application.

For several years thereafter, the IRS held Trongone's application in abeyance pending the resolution of the target taxpayers' appeals. Then, in 2022, a WBO analyst finalized an Award Recommendation Memo, in which he recommended that the WBO deny Trongone's claim. Again, the analyst described every issue that Trongone had identified for both target taxpayers. And, proceeding issue-by-issue, the analyst

**PUBLIC COPY – SEALED INFORMATION DELETED**

explained why Trongone's application did not contribute to the audits and thus did not merit an award.

The analyst prepared a preliminary denial letter and in early February 2023, the IRS mailed that letter to Trongone. The letter notified Trongone that the information in her application had not been used to collect any proceeds.

Trongone disputed that conclusion. She also maintained that the IRS had used her information in subsequent tax years and that she ought to receive an award for those years as well.

The analyst was not persuaded. He recommended that the IRS issue a final denial letter disposing of Trongone's claim. ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ███████████████████████████████████████████ ██████████████████████████████ The IRS adopted the analyst's recommendation and, on March 3, 2023, it issued a final denial letter. It repeated that it had already identified the issues Trongone raised and that her application did not contribute to the IRS's audits or any resulting adjustments.

## C

Proceeding *pro se*, Trongone sought review from the Tax Court. She also moved to supplement the record to include the complete "administrative files" from the IRS's investigations for tax years 2013 through 2017. J.A. 23. To support her argument that the IRS had collected proceeds for those years based at least in part on her application, she attached to her

**PUBLIC COPY – SEALED INFORMATION DELETED**

motion several Form 4549s, which reflect adjustments to a taxpayer's returns. These forms depicted adjustments to Taxpayer 1's returns that, Trongone argued, traced back to her application.

The Tax Court treated the motion as a "motion to compel discovery" and denied it. J.A. 45–46. It explained that Trongone had failed to comply with the Tax Court's procedural rules, which require parties to first seek discovery informally and then formally before the court considers compelling discovery. *See* T.C. R. 70(a)(1), 71(c), 72(b)(2). Trongone attempted to obtain the documents informally by emailing an IRS attorney. When her efforts were rebuffed, she moved once more to supplement the record. The Tax Court treated this as another motion to compel discovery and denied it again, explaining that Trongone had failed to serve formal discovery requests like interrogatories or requests for production.

The IRS then moved for summary judgment. It contended that the record supported its determination that it had already known about the facts underlying Trongone's application and had not expanded its audits in response to her application. Thus, in the IRS's view, Trongone's application did not contribute to its audits or ultimate adjustments and accordingly did not merit an award. Trongone opposed summary judgment, contending principally that the administrative record was incomplete and that she needed discovery to support her claim, especially as to tax years 2013 through 2017.

The Tax Court sided with the IRS. It determined that the administrative record supported the IRS's determination that Trongone's application had not contributed to the agency's investigation. And, emphasizing that its review is generally confined to the administrative record, the Tax Court explained

9

that it would not supplement the record unless Trongone could establish that the IRS had deliberately or negligently excluded documents from the record or that some other cause existed. Because Trongone had failed to make that showing, the Tax Court declined to supplement the record and entered summary judgment for the IRS.

Trongone unsuccessfully sought reconsideration. She then filed a notice of appeal in the U.S. Court of Appeals for the Third Circuit. On the IRS's motion, the Third Circuit transferred the appeal to this Court. We appointed Georgetown University Law Center Professor Erica Hashimoto as *amicus curiae* to present argument on Trongone's behalf and, through her student designates, she has ably discharged her responsibilities.

## II. ANALYSIS

### A

We review *de novo* the Tax Court's decision to grant summary judgment. *Est. of Insinga*, 149 F.4th at 718. Because the Internal Revenue Code does not provide a standard of review for whistleblower claims, the Tax Court has applied the Administrative Procedure Act's default standard. *Kasper v. Comm'r*, 150 T.C. 8, 21–22 (2018). In reviewing the Tax Court's summary judgment here, then, we consider *de novo* whether the IRS's underlying decision was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *see, e.g., Villa-Arce v. Comm'r*, 68 F.4th 1328, 1331–32 (D.C. Cir. 2023).

The parties agree that we have jurisdiction. Nevertheless, we must assure ourselves that we do. *Steel Co. v. Citizens for*

**PUBLIC COPY – SEALED INFORMATION DELETED**

*a Better Env't*, 523 U.S. 83, 95 (1998). Our jurisdiction is "predicated on the Tax Court possessing jurisdiction." *Kennedy*, 142 F.4th at 775. And the Tax Court possesses jurisdiction to review "[a]ny determination regarding an award" under paragraphs (1) through (3)—*i.e.*, the paragraphs providing for mandatory awards. 26 U.S.C. § 7623(b)(4). These requirements are met here. The IRS audited the target taxpayers identified in Trongone's application. And, upon receiving Trongone's application, the IRS forwarded it to the relevant exam team. In these circumstances, the IRS's denial letter constitutes a determination regarding an award, *Est. of Insinga*, 149 F.4th at 718, and the question whether the IRS ultimately collected proceeds *based on* Trongone's application is a merits question, *Whistleblower 972-17W v. Comm'r*, 159 T.C. 1, 9 (2022). The Tax Court had jurisdiction of Trongone's claim and, consequently, so do we.

**B**

Trongone, echoed more fully by Amicus, contends that the Tax Court erred by granting summary judgment on an inadequate record. She also argues that the Tax Court abused its discretion by declining to supplement the administrative record with the administrative files from tax years 2013 through 2017. We agree with the former and thus do not separately address the latter.

Because Trongone essentially challenges the evidence underlying the IRS's decision, we assess her argument under the APA's deferential arbitrary-and-capricious standard. *Crooks v. Mabus*, 845 F.3d 412, 423 (D.C. Cir. 2016). In applying that standard, we may not "substitute [our] judgment for that of the agency." *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009) (citation modified). But we must

ensure that the agency's decision is "reasonable and reasonably explained." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). An agency's decision fails that test if it "runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n of the U.S. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). And, if the administrative record does not support an agency's determination, we ordinarily remand for further investigation or explanation. *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

Remand to the IRS is the appropriate course here. The record simply does not support the IRS's conclusion that Trongone's application could not have contributed to its investigation for tax years 2013 through 2017. Indeed, the IRS's rationale runs counter to the existing record, which shows that the SME returned much of Trongone's application to the WBO due to taint concerns but passed along portions of it to the exam team. The Tax Court should have remanded Trongone's claim to the agency for further consideration and we reverse its decision to the contrary.[3]

---

[3] Amicus asserts (and the IRS does not dispute) that Trongone would have been entitled to an award for tax years 2013 through 2017, even though her application extended only through 2012, had the IRS investigated and collected an award for those later years based on her application. That much follows from the Treasury Department's regulations, which recognize that a whistleblower may be entitled to an award stemming from misconduct that is similar to, but arises after, the misconduct alleged. Treas. Reg. § 301.7623–2(b); *see id.* § 301.7623–2(b)(2) (ex. 2).

12

The flaw in the IRS's decision is best illustrated by contrasting the agency's analysis and the record it compiled for tax years 2011 and 2012 with tax years 2013 through 2017. Consider again how the IRS assessed Trongone's claim for tax years 2011 and 2012. The agency produced a record spanning nearly 900 pages, full of reports and other documentary evidence supporting the agency's determination that Trongone's application had not contributed to its audits or ultimate adjustments. For example, the agent who compiled the narratives explained that Trongone's allegations did not contribute to the agency's investigation of Taxpayer 2's unreported personal income. To support that conclusion, the agent highlighted a risk analysis for the personal-income issue created months before the exam team had received Trongone's application. Because the exam team already knew the facts underlying Trongone's allegations, the agent sensibly concluded that Trongone's application did not contribute to the exam team's personal-income investigation. We do not mean to suggest that this level of detail or corroboration—or a 900-page record, for that matter—is always necessary to sustain an agency's determination. But the agency's thoroughgoing submission for tax years 2011 and 2012 throws into sharp relief the perfunctory nature of its decision for tax years 2013 through 2017.



13

We conclude that the analyst's conclusion, which the IRS ultimately adopted, is not supported by the record. Although the SME returned the nineteen pages of attachments to the WBO as possibly tainted, he forwarded Trongone's Form 211 and accompanying cover letter to the exam team. The exam team then considered the substance of Trongone's application. Indeed, it was this sequence of events that precipitated the exam team's detailed explanation of its investigations in the first place. It is true that the exam team did not find Trongone's application helpful. But that was not because the application was tainted; it was because the team already knew the facts underlying her allegations or found that they lacked merit. The analyst's assertion therefore overlooks an obvious question: If the exam team considered the substance of Trongone's application as to tax years 2011 and 2012, why did it not do so for tax years 2013 through 2017? The existing record, which is largely silent as to tax years 2013 through 2017, does not disclose an answer. And what it *does* disclose "belies" the analyst's determination that the exam team could not have relied on Trongone's application because the application was tainted. *Petrol. Commc'ns, Inc. v. FCC*, 22 F.3d 1164, 1172 (D.C. Cir. 1994). The IRS should have more seriously inquired into the merits of Trongone's claim for tax years 2013 through 2017 before denying it. And what it did instead—deny her claim on the basis of its analyst's "bare assertion"—was arbitrary. *Evergreen Shipping Agency (Am.) Corp. v. Fed. Mar. Comm'n*, 106 F.4th 1113, 1118 (D.C. Cir. 2024). On remand, the agency may still of course decide that Trongone is not entitled to an award because it did not collect proceeds for any tax year at issue based on her application. *See Local 814, Int'l Bhd. of Teamsters v. NLRB*, 546 F.2d 989, 992 (D.C. Cir. 1976) (per curiam). We simply hold that the agency's stated explanation does not support the decision it reached.

14

The IRS suggests that any error was harmless. On its telling, Amicus cannot show that the record was inadequate because the record encompasses all of the documents the WBO considered in issuing its decision. The IRS certified that the administrative record contained all of those documents, it points out, and Amicus has not rebutted the presumption of regularity attaching to that certification.

This argument misconceives the flaw in the IRS's decision. The problem is not that the IRS mistakenly failed to include documents it considered in the administrative record. It is that the record the agency submitted does not support the decision that it made. And it seems implicit in the IRS's argument that the agency did not, in evaluating Trongone's application, consider materials specific to tax years 2013 through 2017. Otherwise, on the IRS's theory, those materials would have been included in the administrative record. The fact that they were omitted instead reinforces our conclusion that the IRS failed to give adequate consideration to Trongone's application with respect to tax years 2013 through 2017.

\* \* \*

Because the record does not support the IRS's determination for tax years 2013 through 2017, the Tax Court should have remanded to the IRS for further explanation or investigation. We reverse the decision of the Tax Court and remand for further proceedings consistent with this opinion.

*So ordered.*